Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Jeff J. Marwil (*pro hac vice* pending)
Brooke H. Blackwell (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

Peter J. Young (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| **CENTURY 21 DEPARTMENT STORES LLC,** *et al.*, | **Chapter 11** |
| | **Case No. 20-12097 (SCC)** |
| Debtors.[1] | **(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE**
**PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A**
**FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Century 21 Department Stores LLC and its debtor affiliates, as debtors and debtors in

possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"), submit this

motion (the "Motion"), seeking entry of an interim order, substantially in the formed attached

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033). The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

hereto as **Exhibit A** (the "Interim Order"),[2] and a final order (the "Final Order"[3] and, together with the Interim Order, the "Orders"), pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"): (i) authorizing the Debtors to use Cash Collateral; (ii) granting adequate protection to the ABL Parties (as defined below), as lenders and secured parties under the ABL Facility (as defined below); (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Orders; (iv) scheduling a final hearing on this Motion within thirty (30) days of the entry of the Interim Order (the "Final Hearing"); and (v) granting related relief. In support of this Motion, the Debtors respectfully state as follows.

## Preliminary Statement[4]

The COVID-19 pandemic and associated public health response has had a profound impact on the U.S. economy and, like almost all other retailers, has fundamentally derailed the Debtors' business and accelerated liquidity constraints. But the Debtors' planned for this circumstance. Through careful insurance planning, the Debtors obtained over $350 million in coverage to protect their businesses against this very eventuality. Unfortunately, to date, the Debtors' insurance providers have not materially paid on the subject Insurance Policies and, despite exploring strategic alternatives, the Debtors commenced these Chapter 11 Cases to liquidate their assets and maximize the value of their estates for the benefit of all stakeholders.

For nearly three months, the ABL Agent and other ABL Parties have supported the Debtors, lending on a discretionary basis despite certain prepetition defaults, funding the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Order or the ABL Credit Agreement (as defined herein), as applicable.

[3] The Debtors will file a form of Final Order prior to the Final Hearing.

[4] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Motion.

appointment of an independent director and appointment of a Chief Restructuring Officer, the exploration of restructuring alternatives, and the pursuit of claims against the insurers.

Commencing in August, the Debtors began evaluating an in-court liquidation in earnest and commenced negotiations with the ABL Parties regarding consensual use of Cash Collateral. These efforts were fruitful and culminated in the ABL Parties' consent to use Cash Collateral, on the terms set forth in the Interim Order, and, on such terms therein, will provide sufficient liquidity and flexibility to pursue an orderly liquidation of all assets, including the Insurance Policies, that will inure to the benefit to all stakeholders. This would not be possible without the consensual use of Cash Collateral.

For these reasons and as set forth herein, the Debtors submit that their continued use of Cash Collateral on the terms set forth in the Orders is in the best interests of their estates, necessary to prevent immediate and irreparable harm and should be approved.

## Background

**A.    The Chapter 11 Cases.**

1.      On the date hereof (the "<u>Petition Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

3. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Norman R. Veit Jr. Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, [5] (the "Veit Declaration"), and the *Debtors' Memorandum in Support of Chapter 11 Filings*, each filed with the Court contemporaneously herewith and incorporated by reference herein.

**B.      Overview of the ABL Facility.**

4. The Debtors finance their business operations primarily through a $125 million asset-based revolving credit facility (the "ABL Facility"). The ABL Facility is secured by properly perfected security interests in and first-priority liens upon substantially all of the Debtors' assets, including proceeds of the Insurance Policies.

5. The ABL Facility is evidenced by that certain the *Credit Agreement*, dated January 4, 2017 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "ABL Credit Agreement" and collectively with the Loan Documents (as defined in the ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "ABL Loan Documents"), among (a) Debtors Century 21 Department Stores LLC and L.I. 2000, Inc. (the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) JPMorgan Chase Bank, N.A. (in its capacities as Administrative Agent, Issuing Bank, and Swing Line Lender, the "ABL Agent"), and (d) the lenders party thereto (collectively, including the ABL Agent and the other "Secured Parties"

---

[5]      Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Veit Declaration.

(as defined in the ABL Credit Agreement), the "ABL Lenders," and the ABL Lenders and the ABL Agent, together, the "ABL Parties"), pursuant to which the ABL Parties made loans, advances and provided other financial accommodations to the Debtors.  Pursuant to the ABL Loan Documents, each Debtor granted senior liens upon and security interests in substantially all of such Debtors' assets to the ABL Agent for the benefit of itself and the other ABL Parties as security for the ABL Prepetition Obligations.

6.      As of the Petition Date, the Debtors were jointly and severally indebted and liable to the ABL Parties under the ABL Loan Documents in an amount not less than approximately $56,260,439.40, inclusive of not less than $18,190,179.09 of issued and outstanding letters of credit as defined in the ABL Loan Documents (collectively, together with accrued and unpaid interest, bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the ABL Loan Documents, including all "Secured Obligations" as defined in the ABL Credit Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "ABL Prepetition Obligations").

**C.     Impact of the Pandemic, Insurance, and other Prepetition Liquidity Issues.**

7.     While the effects of COVID-19 on the American economy, the retail industry and the Debtors' business have been devastating, the Debtors were uniquely positioned as a result of careful insurance planning.  Debtor Century 21 Department Stores LLC and several of its non-debtor affiliates are named insureds under various insurance policies (collectively, the "Insurance Policies") that collectively provide for up to $350 million of insurance coverage, including for property damage, business interruption and other situations that would prevent the public from entering the Debtors' stores.  Although the Debtors' losses are clearly covered by the Insurance Policies, their insurance providers (the "Insurance Providers") delayed in responding to their insureds' claims, repeatedly requested irrelevant or duplicative materials, and refused to make any meaningful payments.

8.     By July 2020, it became clear that the Insurance Providers would not honor the majority of their obligations under the Insurance Policies and as a result, on July 8, 2020, the Debtors and certain of their affiliates filed in the Supreme Court of the State of New York (the "State Court") a suit, captioned  *Century 21 Department Stores, LLC* v. *Starr Surplus Lines Insurance Co*., 652975/2020) (the "Insurance Action"), against several of the Insurance Providers (a) alleging breach of the relevant Insurance Policies as a result of the Insurance Providers' failure to compensate the Debtors for their losses under the policies and (b) seeking damages of over $175 million for the period March 2020 through May 31, 2020 and reserving their right to seek additional amounts for later time periods, as their losses mount.  As of the Petition Date, no answer has been filed by the Insurance Providers and no orders (substantive or otherwise have been entered by the State Court).

9.      Further, as a result of the COVID-related closures of their stores and inability to access insurance proceeds, the Debtors have been in default of their ABL Facility for several months.  On June 18, 2020, the ABL Agent notified the Debtors of certain "Events of Default" under the ABL Credit Agreement as a result of the Debtors' failure to provide audited financial statements without a "going concern" qualification by June 16, 2020, and to name the ABL Agent as a lender loss payee on certain of the Insurance Policies.

10.     Without proceeds of the Insurance Policies available to them and with mounting losses the result of sustained store closures and lower demand, the Debtors estimated they needed significant new capital, which proved unavailable to continue to effectively operate their business.

**D.      The Debtors' Restructuring Efforts.**

11.     Notwithstanding these defaults and despite not having sufficient collateral to support additional borrowings, the ABL Agent and other ABL Parties continued to support the Debtors, lending on a discretionary basis into the defaults while the Debtors explored restructuring alternatives and pursued claims against their insurers.  The ABL Parties also supported and provided additional funding for the appointment of an independent director and third-party Chief Restructuring Officer to help the Debtors best maximize value for all constituents.

12.     It was against this backdrop, and with the support of the ABL Parties, that, prior to the Petition Date, the Debtors and their professionals worked diligently to solicit and develop strategic alternatives to maximize the Debtors' value for the benefit of all of their stakeholders.  In June 2020, with the funding and support of the ABL Parties, the Debtors and their professionals began to contact prospective financial and/or strategic partners to gauge interest in a strategic transaction with the Debtors.

13. Unfortunately, the Debtors' efforts did not yield any viable strategic transaction counterparty, and the Debtors have commenced these Chapter 11 Cases to expeditiously resolve the Insurance Action, effectuate an orderly liquidation of their assets and maximize the value of their estates for the benefit of their stakeholders. The Debtors determined that filing for Chapter 11 protection, utilizing Cash Collateral (with the consent and support of the ABL Parties), and pursuing the Insurance Action in an expedited fashion while also commencing an orderly liquidation of their assets is their best available option to maximize value for all parties in interest.

## Jurisdiction and Venue

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code.

## Relief Requested

16. By this Motion, the Debtors seek entry of the Orders:

    a. authorizing the Debtors to use the ABL Parties' Cash Collateral;

    b. providing adequate protection to the ABL Parties for any Diminution in the Value (as defined in the Interim Order);

    c. modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement the terms and provisions of the Orders;

    d. waiving any applicable stays under the Bankruptcy Rules and providing for immediate effectiveness of the Orders upon their entry;

e. scheduling the Final Hearing to consider the relief requested in this Motion on a final basis and approving the form of notice with respect thereto; and

f. granting certain related relief described herein.

**Concise Statement Pursuant to Bankruptcy Rule 4001**

17. The Debtors submit the following concise statement of the material terms of the Interim Order, as required by Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2.[6]

| Summary of Material Terms | | Location in Interim Order |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | The ABL Parties | ¶ F(i) |
| **Material Conditions to Closing, Including Budget Provisions** Bankruptcy Rule 4001(b)(1)(B)(iii) Local Bankruptcy Rule 4001-2(a)(2) | Cash Collateral may be used during the Cash Collateral Period to pay the amount and type of expenses set forth in the Budget. | ¶¶ 2, 3 |
| **Pricing and Economic Terms; Fees** Local Bankruptcy Rule 4001-2(a)(2) | <ul><li>ABL Consent Fee of $50,000 per week</li><li>Payment of reasonable and documented fees and expenses incurred by professionals retained by the ABL Agent.</li></ul> | ¶ 7 |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) Local Bankruptcy Rule 4001-2(a)(1), (c) | Debtors require the use of Cash Collateral to, among other things, preserve and maximize the value of the assets of their bankruptcy estates, including to fund working capital to pay their operating expenses. Debtors' estates will suffer immediate and irreparable harm in the absence of this relief. | ¶¶ G, 2, 3 |
| **Authorized Amount and Duration of Use** Bankruptcy Rule 4001(b)(1)(B)(iii) Local | Cash Collateral may be used during the Cash Collateral Period, up to the Cash Collateral Limit to pay the amount and type of expenses set forth in the Budget (subject to the Permitted Variances). | ¶¶ 2, 3 |

---

[6] This summary is qualified in its entirety by the provisions of the Interim Order. Capitalized terms used but not otherwise defined in this summary have the meanings given to them elsewhere in this Motion or in the Interim Order. To the extent there is any conflict between this summary and the Interim Order, the terms of the Interim Order control. The Debtors reserve the right to supplement these statements.

| | | |
|---|---|---|
| Bankruptcy Rule 4001-2(a)(1) | | |
| **Milestones**<br>Local Bankruptcy Rule 4001-2(a)(12) | Each Debtor shall satisfy, or cause to be satisfied, as applicable, each of the following:<br><br>Case Milestones.<br><br>• Within 3 business days of the Petition Date, the Court shall have entered interim orders in form and substance, in each case, satisfactory to the ABL Agent, (i) authorizing the Debtors: to use Cash Collateral on terms and conditions acceptable to Agents; (ii) confirming that the Store Closing Liquidation Agreement is effective and authorizing the continuation of the Store Closing Sales; and (iii) authorizing the Debtors to use and continue to operate the Cash Management System;<br><br>• Within 5 days of the Petition Date, the Debtors shall have commenced Store Closing Sales at all retail locations;<br><br>• Within 30 days of the Petition Date, the Court shall have entered final orders in form and substance, in each case, satisfactory to the ABL Agent, authorizing the Debtors: (i) to use Cash Collateral on terms and conditions acceptable to Agents; (ii) to assume the Debtors' Store Closing Liquidation Agreement; (iii) to conduct the Store Closing Sales; and (iv) to use and continue to operate the Cash Management System; and<br><br>• Within 90 days of the Petition Date, the Debtors shall have made Payment in Full.<br><br>Insurance Sale Milestones.<br><br>• Within 21 days of the Petition Date, the Debtors shall file a motion requesting, among other things, approval of bidding procedures (which may include certain protections for a stalking horse bidder) in connection with a section 363 sale process (the "Insurance Claims Sale") with respect to the Debtors' claims against their insurance providers for property damage, business interruption and other situations that would prevent the public from entering the Debtors' stores ("Insurance Assets"); | ¶ 6 |

| | | |
|---|---|---|
| | • Within 70 days of the Petition Date, the Debtors shall have conducted an auction for the sale of the Insurance Assets;<br>• Within 72 days of the Petition Date, the Debtors shall enter into an asset purchase agreement with the winning bidder for the Insurance Assets (the "Insurance Claims APA");<br>• Within 82 days of the Petition Date, the Debtors shall receive an order from the Court approving the Insurance Claims Sale and providing for the proceeds from such sale to be applied first to reduce the ABL Obligations until Paid in Full and second to the Debtors' estates to be applied in accordance with the priorities of the Bankruptcy Code (the "Proceeds Waterfall"); and<br>• Within 90 days of the Petition Date, the Debtors shall have consummated the Insurance Claims APA and applied the proceeds thereof in accordance with the Proceeds Waterfall. | |
| **Termination Date**<br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The Termination Date shall occur upon written notice by the ABL Agent, to the Debtors, U.S. Trustee and any Committee upon the occurrence of the earliest Termination Event, as outlined in the Interim Order. | ¶ 5 |
| **Termination Events/Events of Default**<br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br>Local Bankruptcy Rule 4001-2(a)(10) | The Interim Order includes the following Termination Events:<br>• the Debtors' failure to satisfy any Milestone (as defined below);<br>• the entry of an order of this Court terminating, reversing, adversely amending, supplementing, staying, or vacating any material provisions of the Interim Order without the prior consent of the ABL Agent;<br>• the Interim Order shall cease, for any reason, to be in full force and effect (other than as a result of the entry of the Final Order), or any liens or claims created in favor of the ABL Agent under the Interim Order shall cease to be enforceable and of the same effect and priority purported to be created hereby, or the Debtors shall so assert in writing;<br>• the entry of any order of the Court that impairs in any way the security interests, liens, priority claims or rights granted to the ABL Agent under the terms of the Interim Order;<br>• the appointment in any of the Cases of a trustee or an examiner with expanded powers, without the prior written consent of the ABL Agent;<br>• the filing by any Debtor of any motion, pleading, application, or adversary proceeding challenging the | ¶ 5 |

| | validity, enforceability, perfection or priority of the liens securing the ABL Prepetition Obligations or asserting any other cause of action against and/or with respect to the ABL Credit Agreement or any other ABL Loan Document, the ABL Collateral, the ABL Agent, or any of the ABL Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any other party); | |
| | • the dismissal of any of the Cases or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, without the prior written consent of the ABL Agent; | |
| | • the failure of the Debtors to perform, in any material respect, any of the material terms, provisions, conditions, covenants, or obligations under the Interim Order; | |
| | • the actual amount of the Total Receipts, Operating Disbursements or Non-Operating Disbursements (as noted on the Budget) deviates from the Budget as set forth in Paragraph 3(c), except as permitted by the Permitted Variances or as otherwise agreed in writing by the ABL Agent; | |
| | • the actual amount of the Aggregate Revolving Exposure (as defined in the ABL Credit Agreement) exceeds the Borrowing Base (as defined in the ABL Credit Agreement), except in accordance with the Budget or with the prior written consent of the ABL Agent; | |
| | • failure by the Debtors to comply with the Budget, subject to Permitted Variances, without the prior written consent of the ABL Agent; | |
| | • the resignation, denial of retention, or termination of the Berkeley Research Group, LLC or any chief restructuring officer, without the prior written consent of the ABL Agent; | |
| | • the payment of, or application by the Debtors for authority to pay, any prepetition claim unless in accordance with the Budget; | |
| | • any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise provide any credit on account of any prepetition indebtedness or payables other than in accordance with the Budget, subject to the Permitted Variances or the prior written consent of the ABL Agent; | |
| | • any Debtor fails to make Payment in Full in accordance with the terms set forth in the Interim Order unless otherwise consented to in writing (which writing may be in e-mail) by the ABL Agent; | |

| | | |
|---|---|---|
| | - failure to pay down the ABL Prepetition Obligations consistent with the Budget without the prior written consent of the ABL Agent (which writing may be in e-mail);<br><br>- any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the ABL Agent under the ABL Loan Documents and/or the Interim Order;<br><br>- any Debtor's fail to provide any additional adequate protection to the ABL Parties ordered by the Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof;<br><br>- any of the Debtors propose, support, or file any plan of reorganization or sale of all or substantially all of any Debtor's assets or entry of any order confirming any such plan or sale that is not conditioned on the Payment in Full on the effective date of such plan or sale without the prior written consent of the ABL Agent;<br><br>- the entry of an order by the Court terminating or modifying the exclusive right of any Debtor to file a plan pursuant to Section 1121 of the Bankruptcy Code, without the prior written consent of the ABL Agent;<br><br>- the entry of an order in the Cases charging any of the ABL Collateral under section 506(c) or limiting the extent or priority of the liens in favor of the ABL Agent pursuant to section 552(b) of the Bankruptcy Code or the commencement of other actions that are materially adverse to any of the ABL Agent or ABL Parties or their respective rights and remedies under the ABL Loan Documents in the Cases (or any order requiring any of the ABL Agent or ABL Parties to be subject to the equitable doctrine of "marshalling") without the prior written consent of the ABL Agent;<br><br>- without the prior written consent of the ABL Agent, the obtaining after the Petition Date of credit or the incurring of indebtedness (other than the Carve Out and the ABL Permitted Liens) that is, in each case, (A) secured by a security interest, mortgage or other lien on all or any portion of the ABL Collateral that is equal or senior to any security interest, mortgage or other lien of the ABL Agent, including, without limitation, any ABL Adequate Protection Liens; or (B) entitled to priority administrative status that is equal or senior to that granted to the ABL Agent, including, without limitation, the ABL Adequate Protection Superpriority Claim; | |

| | | |
|---|---|---|
| | • the termination or resignation of the Store Closing Consultant without the prior written consent of the ABL Agent; <br> • any Debtor, including any subsidiary or affiliate thereof, promotes or otherwise markets discounting of Collateral offered for sale at any store location other than in the normal course of business or in a manner consistent with the Store Closing Liquidation Agreement; <br> • without the prior written consent of the ABL Agent, the termination, discontinuation or suspension of the Store Closing Sales at any of the Debtors' store locations or through any of their e-commerce platforms; <br> • the automatic stay shall be modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of the ABL Agent or any of the ABL Parties, without the prior written consent of the ABL Agent; or <br> • the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by the ABL Agent or any of the ABL Parties arising under the ABL Loan Documents. | |
| **Adequate Protection** <br> Bankruptcy Rule 4001(b)(1)(B)(iv) <br> Local Bankruptcy Rule 4001-2(a)(4) | Adequate protection includes, as further set forth in the Interim Order: <br> • adequate protection liens, including replacement and additional liens and security interests in all existing and after-acquired property, including, subject to entry of a final order, on proceeds of adequate protection claims; <br> • payment of default interest on a monthly basis; <br> • a superpriority administrative expense claim pursuant to sections 503 and 507(b); <br> • mandatory paydown of prepetition obligations with excess cash and non-ordinary course sale proceeds, and payment of ABL Consent Fee; and <br> • payment of reasonable and documented fees and expenses incurred by professionals retained by the ABL Agent. | ¶ 7 |
| **Carve-Out** <br> Bankruptcy Rule 4001(b)(1)(B)(iii) <br> Local Bankruptcy Rule 4001-2(a)(5) | The Interim Order provides a Carve-Out of certain statutory fees, certain fees and expenses of a chapter 7 trustee, and allowed professional fees of the Debtors and any official committee of unsecured creditors appointed pursuant to section 1103 of the Bankruptcy Code, including a Post-Carve-Out Trigger Cap. | ¶ 4 |
| **Waiver/Modification of Automatic Stay** | The automatic stay is modified to permit the Debtors and the ABL Agent to perform and implement the terms of the | ¶ 11 |

| | | |
|---|---|---|
| Bankruptcy Rule 4001(b)(1)(B)(iii) | Interim Order, including to perfect adequate protection liens, implement authorized post-petition financing arrangements, and receive payments with respect to the ABL Prepetition Obligations. | |
| **Stipulations of the Debtors** Bankruptcy Rule 4001(b)(1)(B)(iii) Local Bankruptcy Rule 4001-2(a)(18) | The Interim Order contains certain stipulations by the Debtors, including, among other things, to: <br>• the amount of the claims of the ABL Parties as of the Petition Date; <br>• the validity and priority of the ABL Parties' liens and the collateral securing such claims; <br>• releases of the ABL Parties in relation to the ABL Facility, ABL Loan Documents and transactions thereunder occurring prior to entry of the Interim Order. | ¶¶ F, 19 |
| **Binding Effect of the Debtors' Stipulations on Third Parties** Bankruptcy Rule 4001(b)(1)(B)(iii) | The stipulations and admissions contained in the Interim Order shall be binding on the Debtors, their estates and any successors, as well as all other parties in interest subject to customary rights of a creditors' committee or other party in interest to seek to challenge such stipulations and admissions. | ¶ 19 |

### The Debtors' Immediate Need to Use Cash Collateral

18.     Without the ability to access Cash Collateral, the Debtors will not be able to continue operating in the ordinary course of business, including the payment of certain expenses, including payroll and other obligations essential to the efficient liquidation of their business and preservation and maximization of value of the Debtors' assets. Absent use of Cash Collateral, the Debtors will be forced to stop operating their business and going out of business sales, and, in the absence of alternative financing arrangements, will suffer immediate and irreparable harm, and be forced to convert these cases to chapter 7 cases under the Bankruptcy Code. The seamless and uninterrupted entry into bankruptcy is essential to the Debtors' liquidation efforts and to maximize the value of their assets for the benefit of all stakeholders.

**Basis for Relief**

**A.     The Use of Cash Collateral Should Be Approved**.

19.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

20.     Here, on the terms set forth in the Interim Order, the ABL Parties—the only parties with an interest in the Cash Collateral—have consented to the Debtors' use of Cash Collateral consistent with the Budget.  Accordingly, the Debtors' use of Cash Collateral satisfies the requirements of section 363(c)(2) of the Bankruptcy Code.

**B.     The Debtors' Proposed Adequate Protection Package Is Appropriate**.

21.     Section 363(c)(2) of the Bankruptcy Code provides that, absent consent, a debtor may use cash collateral where "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(A), (B). Section 363(e) of the Bankruptcy Code requires that the debtor adequately protect the secured creditors' interest in property to be used by a debtor against any diminution in value of such interest resulting from the debtor's use of the property during the chapter 11 proceedings. 11 U.S.C. § 363(e).

22.     The essential purpose of adequate protection is to protect against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor. *See Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010) ("Adequate protection is generally defined as a method by which a secured creditor may apply to the Bankruptcy Court to protect its interest in the diminution in value of its

security during a bankruptcy proceeding." (internal quotation marks omitted)); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."); *In re Carbone Cos., Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral." (citation omitted)). "However, neither the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties." *WorldCom, Inc.*, 304 B.R. at 619; *see In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) ("Adequate protection, not absolute protection, is the statutory standard.").[7]

23.     Generally, what constitutes sufficient adequate protection is decided on a case-by-case basis, and adequate protection may be provided in various forms, including payment of adequate protection fees, payment of interest, or granting of replacement liens or administrative claims. *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case."); *In re Realty Sw. Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992) ("'Adequate protection' is a question of fact because it has as its linchpin the concept of value, and therefore is determined on a case-bycase basis.") (citation omitted); *Beker Indus.*, 58 B.R. at 736 (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted).

---

[7] The Debtors' proposed counsel has copies of each of the above-referenced orders and will make them available to this Court and to any party that requests them. The orders are also available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

24.     On the facts of these Chapter 11 Cases, the Debtors propose to provide the ABL Lenders with an adequate protection package that sufficiently protects against Diminution in Value caused by the use of their collateral and that is consistent with grants in cases of similar size and complexity.  More specifically, the Debtors propose to provide the ABL Parties with adequate protection, to the extent of any Diminution in Value of their interests in Cash Collateral as of the Petition Date, consisting of, among other protections: (a) adequate protection liens on substantially all assets of the Debtors, including, upon entry of the Final Order, proceeds avoidance actions[8]; (b) an allowed superpriority administrative expense claims against the Debtors for any Diminution in Value in the Cash Collateral; (c) payment of the ABL Parties' professionals and certain other fees; (d) certain financial reporting requirements; and (e) the attainment of certain milestones in the chapter 11 cases.  The Debtors believe that the adequate protection of the ABL Lenders on the terms set forth in the Orders is sufficient to protect the ABL Lenders in the event of any Diminution in Value.  The Debtors submit that such protections are wholly appropriate, were negotiated at arms'-length, and, by allowing access to Cash Collateral, will ultimately maximize stakeholder recovers.

25.     Accordingly, the Debtors submit that the adequate protection proposed for the benefit of the ABL Parties is necessary and appropriate and satisfies the standards under section 363(c)(2) of the Bankruptcy Code.  Courts presiding over other retail cases have approved similar adequate protection packages.  *See, e.g.*, *In re Art Van Furniture, LLC*, Case No. 20-10553 (Bankr.

---

[8] A grant of an adequate protection lien on substantially all assets, including unencumbered assets and proceeds of avoidance actions, is appropriate. *In re AppliedTheory Corp.*, 2008 WL 1869770, *1 (Bankr. S.D.N.Y. Apr. 24, 2008) (finding that the Bankruptcy Code expressly authorizes a debtor to grant lenders a lien on the proceeds of avoidance actions and other initially unencumbered assets as adequate protection, especially where the lenders permit the debtor to use their cash collateral); *In re Metaldyne Corp.*, 2009 Bankr. LEXIS 1533, *13-16 (Bankr. S.D.N.Y. Jun. 23, 2009) (finding that the grant of liens on unencumbered assets, including avoidance actions and foreign stock, was a proper exercise of the debtors' business judgment).

D. Del., August 13, 2020) [ECF No. 913] (approving, among other protections, mandatory paydowns, consent fees, charging of default interest, and grants of adequate protection liens on unencumbered assets, including avoidance actions); *In re Le Tote, Inc.*, Case No. 20-33332 (Bankr. E.D. Va., August 2, 2020) [ECF No. 268] (same); *In re Stage Stores, Inc.*, Case No. 20-32564 (Bankr. S.D. Tex., May 10, 2020) [ECF No. 441] (same); *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (Bankr. D.N.J., March 11, 2020) [ECF No. 395] (same); *In re SFP Franchise Corp.*, Case No. 20-10134 (Bankr. D. Del. 20-10134, January 1, 2020) [ECF No. 203] (same); *In re Destination Maternity Corp*, Case No. 19-12256 (Bankr. D. Del., October 21, 2019) [ECF No. 306] (same).

## C.       The Orders Include Other Appropriate Protections.

26.       To further induce the ABL Parties to consent to the use of Cash Collateral, the Debtors and the ABL Parties negotiated other, case appropriate protections, including waivers of: (a) surcharge rights under section 506(c) of the Bankruptcy Code; (b) the equities of the case exception set forth in section 552(b) of the Bankruptcy Code; and (c) marshalling and any other similar doctrines.  These provisions are appropriate, consistent with the market, and supported by applicable law.  *See, e.g.*, *Hartford Underwriters Ins. Co. v. Planters Bank N.A.*, 530 U.S. 1 (2000) (only a trustee or a debtor in possession has the right to pursue a section 506(c) claim against a secured creditor); *In re Smart World Techs., LLC*, 423 F.3d 166, 181–82 (2d Cir. 2005) (same); *In re Am. Media, Inc.*, 2010 WL 5141244, *4 (Bankr. S.D.N.Y. Dec. 6, 2010) ("In light of the Prepetition Agent's and Prepetition Lenders' agreement to subordinate their liens and superpriority claims to [a carve out] . . . and to permit the use of their Cash Collateral . . ., [they] are entitled to a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and . . . a waiver of the provisions of section 506(c) of the Bankruptcy Code.").

27. While these remain subject to entry of the Final Order, on the facts of these Chapter 11 Cases, they represent an appropriate exercise of the Debtors' business judgment and should be.

**D. The Proposed Budget is Adequate**

28. The Debtors believe that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 4001-2(d).

**E. The Automatic Stay Should Be Modified on a Limited Basis**.

29. The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to grant the security interests and liens described above to ABL Parties and to perform such acts as may be required to assure the perfection and priority of such security interests and liens. The Orders also provide that the automatic stay is modified and vacated to the extent necessary, upon a Termination Date and upon expiration of the Stay Relief Notice Period and upon entry of an order granting the ABL Agent or any of the ABL Parties, as applicable, relief from stay at any Stay Relief Hearing, to allow the ABL Parties to exercise the rights and remedies available to them under the Orders. Stay modifications of this kind are necessary to effectuate the relief granted in the Orders and are ordinary and standard features under orders authorizing use of cash collateral.

**F. Interim Relief Should Be Granted**.

30. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after the service of such motion. The Court, however, is authorized to conduct an

expedited hearing prior to the expiration of such fourteen-day period and to authorize the use of cash collateral on an interim basis where, as here, such relief is necessary to avoid immediate and irreparable harm to the debtor's estate. Fed. R. Bankr. R. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes a court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing." 11 U.S.C. § 363(c)(3).

31.     Pending the Final Hearing, the Debtors require immediate access to Cash Collateral to satisfy the day-to-day needs of their business operations and liquidation sales. The Debtors have an immediate need for access to liquidity to satisfy essential operational needs, all of which are necessary to preserve and maintain the value of the Debtors' assets for the benefit of all parties in interest.

32.     Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtors request an expedited hearing to consider this Motion and entry of the Interim Order authorizing the Debtors' use of Cash Collateral. In addition, the Debtors request that the Court schedule a Final Hearing as soon as practicable.

33.     For the reasons set forth above, the Debtors submit that the relief requested in this Motion is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore should be granted.

## Reservation of Rights

34.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any

creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **Debtors Have Satisfied Bankruptcy Rule 6003(b)**

35.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. The Debtors require a smooth entry into chapter 11 to maximize estate value. The Debtors require immediate access to Cash Collateral to satisfy the day-to-day needs of their business operations and liquidation sales. The Debtors have an immediate need for access to liquidity to satisfy essential operational needs, all of which are necessary to preserve and maintain the value of the Debtors' assets for the benefit of all parties in interest. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## **Bankruptcy Rules 6004(a) and (h)**

36.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the Veit Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.

Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Notice

37.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) the United States Attorney's Office for the Southern District of New York; (iv) counsel to the ABL Agent, Julia Frost-Davies (julia.frost-davies@morganlewis.com) and David M. Riley (david.riley@morganlewis.com); and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

38.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE the Debtors respectfully request entry of the Interim Order and Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: September 10, 2020
       New York, New York

Respectfully submitted,

/s/  Lucy F. Kweskin

Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email: lkweskin@proskauer.com
Email: mskrzynski@proskauer.com

-and-

Jeff J. Marwil (*pro hac vice* pending)
Brooke H. Blackwell (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551
Email: jmarwil@proskauer.com
Email: bblackwell@proskauer.com

-and-

Peter J. Young (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 577-2193
Email: pyoung@proskauer.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*