Successful
Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Peter J. Young (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Jeff J. Marwil (admitted *pro hac vice*)
Brooke H. Blackwell (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | **Chapter 11** |
| **CENTURY 21 DEPARTMENT STORES LLC,** *et al.*, | **Case No. 20-12097 (SCC)** |
| Debtors.[1] | **(Jointly Administered)** |

**DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER APPROVING
AUCTION AND BID PROCEDURES FOR THE SALE OF CERTAIN
INTELLECTUAL PROPERTY AND (II) AN ORDER, PURSUANT TO
SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE,
(A) AUTHORIZING THE SALE OF CERTAIN INTELLECTUAL
PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS, AND (B) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033). The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these jointly-administered chapter 11 cases hereby submit this motion (this "Motion") for the entry of (I) an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to implement solicitation, bid, and auction procedures set forth herein (collectively, the "Bid Procedures") for the sale (the "Sale") of certain of the Debtors' Intellectual Property (as defined below) (the "Bidding Procedures Order"), and (II) an order authorizing the Sale of the Intellectual Property on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and interests, to the winning bidder for the assets (such entity or entities each, a "Purchaser") that submit the highest or otherwise best offer for the Intellectual Property as determined by the Debtors in their business judgment pursuant to the Bid Procedures (the "Sale Order")[2], and (ii) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]      No later than 7 days before the Sale Hearing, the Debtors will file a form of Sale Order, which Sale Order will provide for sale proceeds to be distributed in accordance with the Intellectual Property Proceeds Waterfall (as defined in the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; and (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 32] (as may be amended, modified or superseded by final order, the "Cash Collateral Order").

3.      The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363, along with Bankruptcy Rules 2002, 6004, and 9014.

## **BACKGROUND**

4.      On September 10, 2020 (the "Petition Date"), each of the Debtors commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

5.      On September 16, 2020, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in these Chapter 11 Cases.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Norman R. Veit Jr. in Support of Debtors' Chapter 11 Petitions and First Day Motions*,[3] (the "First Day Declaration"), and the *Debtors' Memorandum in Support of Chapter 11 Filings* (the "Insurance Memo"), incorporated by reference herein (ECF Nos. 13 and 15, respectively).

7.      The Debtors determined that the best way to maximize value for the benefit of all stakeholders was a prompt and orderly wind-down of their businesses through the implementation of store closing sales (collectively, the "Store Closing Sales") and related liquidation initiatives. As more fully discussed in the First Day Declaration, the decision to liquidate was reached

---

[3]      Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

following a lengthy process in which the Debtors considered and explored all reasonable strategic alternatives.

8.      Accordingly, on the Petition Date, the Debtors filed the *Motion of Debtors for Interim and Final Orders (A)(1) Confirming, on an Interim Basis, that the Store Closing Agreement is Operative and Effective and (2) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, (C) Approving Dispute Resolution Procedures, (D) Authorizing Customary Bonuses to Employees of Closing Store, and (E) Approving the Debtors' Store Closing Plan* [Docket No. 4] (the "GOB Motion"), which was approved on an interim basis on September 15, 2020.  [Docket No. 55].

A.      **The Sale of Intellectual Property**

9.      In connection with their retail operations, the Debtors have developed and utilized various intellectual property assets consisting of, without limitation, trademarks, domain names, customer files and related transaction data, social media assets and internet protocol addresses (collectively, the "Intellectual Property").

10.      As referenced above and more fully described in the GOB Motion and First Day Declaration, the Debtors commenced the Store Closing Sales at all of their retail locations on or about September 3, 2020.   It is anticipated that that the Store Closing Sales will be completed on or before November 30, 2020.

11.      On September 21, 2020, the Debtors entered into an agreement with Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and sell the Debtors' Intellectual Property assets.  Since that time, Hilco Streambank, with the assistance and oversight of the Debtors' management and advisors, has been actively engaged in the process of marketing the Debtors' Intellectual Property assets for sale.  After consultation with Hilco Streambank and

their other advisors, the Debtors have determined that in order to maximize value of the Intellectual Property assets, the Debtors must conduct an open auction process for those assets.

12.     It is important that the Debtors conduct the Sale process with respect to the Intellectual Property now to maintain engagement and name recognition in the marketplace. Delays in the Sale process will inevitably lead to a loss in value.

13.     The Debtors believe it is prudent at this time and in the best interests of their estates and creditors to implement the Bid Procedures summarized below.

**B.      The Proposed Bid Procedures**

14.     The Debtors propose to sell the Intellectual Property assets either in whole or part through one or more sale transactions pursuant to the terms of a purchase agreement (or agreements) to be negotiated by and between the Debtors and the Successful Bidder selected pursuant to the Bid Procedures. The Debtors propose to implement the Bid Procedures described below in an effort to maximize the realizable value of the Intellectual Property for the benefit of the Debtors' estates, creditors, and other interested parties. The Bid Procedures contemplate a solicitation and bid process pursuant to which all interested and qualified parties will have a fair opportunity to perform diligence and bid on the Intellectual Property and where all bids will be subject to higher or better offers. The Debtors will present further evidence with respect to the Sale process and the Successful Bid(s) at the Sale Hearing.

15.    Specifically, the Debtors will implement the following Bid Procedures, on substantially the terms set forth below, for the Sale of the Intellectual Property:[4]  [Conform to Bid Procedures]

(a)    Bid Deadline: [November 16], 2020 at 12:00 p.m. (ET).[5]

(b)    Qualified Bid: The Debtors will require a qualified bid (a "Qualified Bid") to meet certain requirements, including (i) enclose a proposed purchase agreement (the "Purchase Agreement") that specifically identifies the Intellectual Property proposed to be purchased, which may be all or a portion of the Intellectual Property, and the proposed consideration, and a blackline to the form of agreement provided by the Debtors or any stalking horse agreement, if applicable; (ii) sets forth the purchase price to be paid (the "Purchase Price") and identifies the cash and noncash components of the Purchase Price; (iii) confirms that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Backup Bidder (as defined therein); (iv) be accompanied by a certified or bank check or wire transfer in an amount equal to 10% of the purchase price identified in the Purchase Agreement as a good faith deposit (the "Qualified Bid Deposit"), which Qualified Bid Deposit shall be applied against the Purchase Price; (v) the bid not be conditioned on obtaining financing or the outcome of any due diligence by the bidder; and fully disclose the identity of each entity that will be bidding for the Intellectual Property or otherwise participating in connection with such bid, and the complete terms of any such participation.  In the event of a credit bid, the party submitting the credit bid must agree to add cash to its bid in an amount sufficient to pay the commission and expenses due to Hilco Streambank.

(c)    Auction(s): If the Debtors receive more than one Qualified Bid (for the Intellectual Property (or certain subset of the Intellectual Property) is received by the Bid Deadline, the Debtors shall conduct one or more auctions (each an "Auction") on [November 19], 2020 at 10:00 a.m. E.T. or such later time as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all bidders, and other invitees.  The Auction will be conducted by video conference, the detail of which will be provided to Qualified Bidders in advance of the Auction.

---

[4]    In the event of any inconsistency between the terms of this Motion and the Bid Procedures, the Bid Procedures shall govern.

[5]    Interested parties wishing to bid on the Intellectual Property should contact David Peress and Richelle Kalnit at Hilco Streambank: dperess@hilcoglobal.com and rkalnit@hilcoglobal.com.

(d)    <u>Auction Rules</u>: The rules governing the Auction shall include: (i) only a bidder who has submitted a Qualified Bid by the Bid Deadline (a "<u>Qualified Bidder</u>") will be eligible to participate at the Auction; (ii) one day prior to the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid(s) as determined by the Debtors' reasonable business judgment and in consultation with the Qualified Bidders; (iii) subsequent bids shall be in cash increments of $100,000 in excess of the Leading Bid *plus* if the Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections; (iv) at the Auction, Qualified Bidders will be permitted to increase their bids, and bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Bid Procedures or until such Auction is adjourned by the Debtors; (v) immediately prior to concluding the Auction, the Debtors (including their independent director) shall, in consultation with the Consultation Parties, (a) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Successful Bidder</u>"); (b) determine and identify the next highest or otherwise best Qualified Bid(s) after the Successful Bid (the "<u>Backup Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Backup Bidder</u>"); and (c) have the right to reject any and all bids;  and (vi) within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

(e)    <u>Notice of Successful Bid(s)</u>. As soon as reasonably practicable following the conclusion of the Auction(s), the Debtors shall file a Notice of Successful Bid(s).  The Notice of Successful Bid(s) shall identify the identity of the Successful Bidder(s), the amount of the Successful Bid(s), the identity of the Backup Bidder(s) and shall include a substantially final version of the Purchase Agreement.

(f)    <u>Sale Hearing</u>. The Court will hold a hearing seeking approval of the Sale(s) to the Successful Bidder(s) on [December 1], 2020 (the "<u>Sale Hearing</u>") or such other date set by the Court.

(g)    <u>Reservation of Rights</u>.  The Debtors reserve the right to seek approval of the Sale of portions of the Intellectual Property through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors to obtain the highest value for the Intellectual Property.  The Debtors further reserve the right as they may reasonably determine, in consultation with the Consultation Parties, to be in the best interests of their estates to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements

of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (iv) remove some or all of the Intellectual Property from the Auction(s); (v) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) adjourn or cancel the Auction(s) and/or Sale Hearing in open court without further notice; and (ix) modify the Bid Procedures as they may determine to be in the best interests of their estates or to withdraw this Motion at any time with or without prejudice.

16.     The Debtors believe that the process contemplated hereby will foster a competitive bidding atmosphere that will generate significant value for their estates.

**C.      Consumer Privacy Ombudsman**

17.     The Debtors are still evaluating whether a consumer privacy ombudsman is required in connection with the Sale.

## RELIEF REQUESTED

18.     By this Motion, the Debtors seek entry of orders (i) authorizing the Debtors to implement the Bid Procedures for the Sale of the Intellectual Property and (ii) following the Sale Hearing, authorizing the Sale of the Debtors' Intellectual Property free and clear of liens, claims, encumbrances, and interests, pursuant to one or more Purchase Agreements executed by and between the Debtors and the Purchaser(s), and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

19.     For the reasons explained below and throughout this Motion, the Debtors' decision to sell the Intellectual Property is a sound exercise of the Debtors' business judgment. Indeed, the Debtors are confident that the aforementioned process will generate the highest value for the Intellectual Property because (i) the Debtors and Hilco Streambank have been actively marketing, and will continue to market, the Intellectual Property to all known and likely potential purchasers, (ii) the Auction(s) will foster a competitive bidding process through which the highest or otherwise

best offer will be generated, and (iii) the Bid Procedures offer maximum flexibility and security to
the Debtors in conjunction with selling the Intellectual Property in an expeditious and value-
maximizing manner.

A.      **Sale(s) of the Intellectual Property Should Be Approved.**

20.     Bankruptcy Code section 363(b)(1) provides: "The trustee, after notice and a
hearing, may use, sell, or lease, other than in the ordinary course of business, property of the
estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) provides: "The Court may issue
any order, process, or judgment that is necessary or appropriate to carry out the provisions of this
title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the
ordinary course of business may be by private sale or by public auction." Fed. R. Bankr.
P. 6004(f)(1). With respect to the notice required in connection with a sale, Bankruptcy
Rule 2002(c)(1) states, in pertinent part, that:

> the notice of a proposed use, sale or lease of property . . . shall
> include the time and place of any public sale, the terms and
> conditions of any private sale and the deadline for filing objections.
> The notice of a proposed use, sale or lease of property, including
> real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

21.     To approve the use, sale, or lease of property outside the ordinary course of
business, the Court must find an "articulated business justification" for the proposed action.
*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d
Cir. 1983)); *see also In re Nine W. Holdings, Inc.*, 588 B.R. 678, 686 (Bankr. S.D.N.Y. 2018)
(debtor has broad discretion to use, sell, or lease, other than in the ordinary course of business,
property of the estate, so long as such use is supported by a good business reason); *Official Comm.
of Unsecured Creditors of LTV Aerospace Def. Co., v. LTV Corp. (In re Chateaugay Corp.)*, 973

9

F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence).

22.      Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. *Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch.)*, 1997 WL188127, \*4 (S.D.N.Y. Apr. 17, 1997) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).

23.      Here, the Sale of the Intellectual Property meets these requirements and, accordingly, the Debtors submit it should be approved.  The Debtors submit that implementation of the Bid Procedures will generate maximum interest in the Intellectual Property, thereby yielding the highest or otherwise best bids for such assets.  Accordingly, the Debtors submit that the proposed Sale will be the culmination of a thorough and exhaustive marketing process, and that the decision to sell the Intellectual Property to the Purchaser(s) is adequately informed, reasonable, and in the best interests of the Debtors, their estates, and other stakeholders.

## I.      The Sale Process is a Sound Exercise of the Debtors' Business Judgment.

24.      There is more than ample business justification to sell the Intellectual Property as set forth herein, and as such, an order granting the relief requested is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a).  Subject to the Purchaser(s) willingness to provide fair and reasonable consideration, the Debtors' estates and creditors will benefit from the approval of the Sale without the added costs in terms of time and expenses associated with a Court-approved sale process.

25.    The Debtors are fully liquidating all of their assets. But for the completion of the Store Closing Sales, the Intellectual Property assets are some of the few remaining assets of the Debtors' estates. Retail brands require constant promotion to maintain relevancy in the marketplace. A delay in the sale of the Intellectual Property will lead to a loss in relevancy and impair the value of these assets. As a result, it is imperative that the Debtors seek to monetize all of their assets in as efficient and expeditious manner as possible. Thus, the Debtors believe that the proposed Sale process is in the best interests of the Debtors, their estates, and creditors and should go forward as soon as is practicable.

26.    Simply put, in the Debtors' business judgment, selling the Intellectual Property through the aforementioned Sale process is the best option for maximizing the overall value of these assets for the benefit of all stakeholders.

## II.    The Proposed Bid Procedures Are Fair and Reasonable.

27.    The Bid Procedures are designed to maximize the value received for the Intellectual Property and will allow for a timely Auction process while providing bidders with ample time and information to submit a timely Qualified Bid. The Bid Procedures are designed to ensure that the Intellectual Property will be sold for the highest or otherwise best possible purchase price under the circumstances of these Chapter 11 Cases. The Debtors shall continue to subject the value of the Intellectual Property to market testing, and by permitting prospective purchasers to bid on the Intellectual Property, the Debtors shall ensure that the ultimate Sale price is an accurate reflection of the Intellectual Property's true value. Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Intellectual Property will be fair and reasonable.

28.    The Debtors and Hilco Streambank will continue to market the Intellectual Property in an appropriate and cost-efficient manner given the value of the Intellectual Property and the

11

associated exigencies.  In light of the marketing efforts and the nature of the assets, the Debtors

believe that the Sale will provide fair and reasonable value for the Intellectual Property.

### III.    The Sale is Proposed in Good Faith.

29.    The Sale is being proposed in good faith.  The Sale will be the product of good-

faith, arms'-length negotiations between the Debtors, on the one hand, and the Purchaser(s), on

the other.  The Debtors believe that the Sale of the Intellectual Property will not be the product of

collusion or bad faith.  No evidence exists to suggest that the Sale will be anything but the product

of arms'-length negotiations between the Debtors and the Purchaser(s), conducted under the

purview of one or more Auction(s).

30.    The Purchase Agreement(s) ultimately executed by and between the Debtors and

the Purchaser(s) and subject to Court approval will be the culmination of a fair and open

solicitation and negotiation process.  The Bid Procedures are designed to ensure that no party is

able to exert undue influence over the process.  Under the circumstances, the Debtors intend to ask

the Court to find that the Successful Bidder (or Back Up Bidder) be afforded the protections that

Bankruptcy Code section 363(m) provides to a good-faith purchaser.  Furthermore, the Bid

Procedures are designed to prevent the Debtors or the Successful Bidder (or Backup Bidder) from

engaging in any conduct that would cause or permit the Purchase Agreement(s), or the Sale of the

Intellectual Property to the Successful Bidder (or Backup Bidder), to be avoided under Bankruptcy

Code section 363(n).

### IV.    Adequate and Reasonable Notice of the Sale Will Be Provided.

31.    The Debtors will provide adequate notice of this Motion to parties in interest, as

required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain

"the time and place of any public sale, the terms and conditions of any private sale and the time

fixed for filing objections."); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. at 180 (the disclosures

necessary in such a sale notice need only include the terms of the sale and the reasons why such a
sale is in the best interests of the estate and do not need to include the functional equivalent of a
disclosure statement).

32.     Several potential bidders have already requested information regarding the Sale of
the Intellectual Property.  In addition, the Debtors will serve this Motion on all parties that have
expressed interest, or the Debtors believe may have an interest, in purchasing the Intellectual
Property.  Those parties will be alerted to the Bid Procedures and to submit offers prior to the Bid
Deadline.  Consistent with their fiduciary duties to their estates, the Debtors will consider all such
offers.

33.     To summarize, in the Debtors' informed business judgment, the Debtors will
continue to market the Intellectual Property, conduct one or more Auctions prior to the Sale
Hearing with respect thereto, and complete the disposition of the Intellectual Property in a manner
best-tailored to generate value for the Debtors' estates while simultaneously limiting the
deterioration in value of the Intellectual Property and the Debtors' exposure to burdensome and
unnecessary administrative expenses. For these reasons, the Debtors' submit that the Court should
approve the sale of the Intellectual Property to the Purchaser(s) selected by the Debtors pursuant
to the Bid Procedures.

**B.**      **The Sales Satisfies the Requirements of Bankruptcy Code Section 363(f).**

34.     Under Bankruptcy Code section 363(f), a debtor in possession may sell all or any
part of its property free and clear of any and all liens, claims, or interests in such property if (i) such
a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim,
or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property
is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a
*bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *In re Dewey & Leboeuf LLP*, No. 12-12321 MG, 2012 WL 5386276, at *5 (Bankr. S.D.N.Y. Nov. 1, 2012) (citing *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Bankruptcy Code section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met)).

35.    Because the Debtors expect that they will satisfy the second and fifth of these requirements, if not others as well, approving the sale of the Intellectual Property free and clear of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). *See, e.g., In re Trans World Airlines, Inc*., 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

## C.    Bid Protections

36.    The Debtors also seek authority, but not direction, pursuant to the Bid Procedures, to select a non-insider third party who the Debtors have determined to otherwise be a Qualified Bidder to act as a stalking horse bidder in connection with the Sale (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, (x) provide a breakup fee, (y) agree to reimburse the reasonable and documented out of pocket fees and expenses and/or (z) agree to pay a "work fee" or other similar cash fee ((x)-(z) collectively, the "Bid Protections"); *provided, however*, that the selection of the Stalking Horse Bidder and any Bid Protections shall be reasonably acceptable to the Prepetition Agent.[6]  The Debtors seek to utilize

---

[6]    The Debtors shall consult with the U.S. Trustee and counsel for the Committee at least one (1) day prior to providing Bid Protections pursuant to the Order.

such authority only if the Debtors determine in their business judgment that any such Bid Protection will facilitate a competitive bidding and Auction process.

37.     Payment of a break-up fee, expense reimbursements and work fees, like those proposed here, in a bidding process for sales is appropriate so long as such payment is a valid exercise of the Debtors' business judgment.  Specifically, bid protections like a breakup fee "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); *see also In re Integrated Resources*, *Inc.*, 147 B.R. 650, 659-660 (Bankr. S.D.N.Y. 1992) (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

38.     Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In essence, the Court may enter any order safeguarding the value of the debtor's estate if doing so is consistent with the Bankruptcy Code. *See, e.g., Chinichian v. Campolongo (In re Chinichian*), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Ditech Holding Corporation*, No. 19-10412 (JLG) (ECF No. 456, Bankr. S.D.N.Y. Apr. 23, 2019) (authorizing designation of one or more stalking horse bidders, including the provision of bid protections); *In re Integrated Res.*, 147 B.R. at 659-660 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . [i]n fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value.")*; In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around

for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence");
*In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

39.     A proposed bidding incentive should be approved when it is in the best interests of the estate. *In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995); *see also In re 310 Associates*, 346 F.3d 31, 34 (2d Cir. 2003); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); *In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); In re Hupp Indus., Inc., 140 B.R. 191 (Bankr. N.D. Ohio 1992).  Typically, this requires that the bidding incentive provide some benefit to the debtor's estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (holding that right to break-up fees and expenses depended on whether bidder provided a benefit to the debtor's estate by promoting competitive bidding or researching the value of the assets at issue to increase the likelihood that the selling price reflected the true value of the company. *Id*. at 537.  The Debtors believe that approval of the Bid Procedures will help foster such a competitive bidding process.

40.     The Stalking Horse Bidder's bid will serve as a minimum floor bid upon which other bidders may rely and validate the offering to the market of potentially interested parties. Therefore, the Stalking Horse Bidder has provided a material benefit to the Debtors, their estates and their respective creditors by encouraging bidding and increasing the likelihood that the best possible price for the Purchased Assets will be received. *See, e.g., Integrated Resources*, 147 B.R. at 659 (noting that termination payment is an "important tool to encourage bidding and to maximize the value of the debtor's assets"); *In re Comdisco, Inc.*, Case No. 01-24795 (RB) (Bankr.

N.D. Ill. Aug. 9, 2002) (finding proposed termination fee to be of substantial benefit to the debtor's estate); *In re Kmart Corp.*, Case No. 02-02474 (SPS) (Bankr. N.D. Ill. May 10, 2002).

41.     The Debtors' ability to select a Stalking Horse Bidder will increase the likelihood that the best possible price for the Intellectual Property will be received, by permitting other qualified bidders to rely on the diligence performed by the Stalking Horse Bidder, and moreover, by allowing qualified bidders to utilize the Stalking Horse Bidder's definitive purchase agreement as a platform for negotiations and modifications in the context of a competitive bidding process.

42.     Accordingly, the Debtors request that the Court authorize the Debtors to select a Stalking Horse Bidder and provide it with certain Bid Protections in the event the Stalking Horse Bidder is not the successful bidder at the Auction.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

43.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To preserve the value of the Intellectual Property and limit the costs of administering and preserving such assets, it is critical that the Debtors close the Sale as soon as possible after all closing conditions have been achieved or waived.

44.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## NOTICE

45.     Notice of this Motion has been provided to (i) the United States Trustee for Region 2; (ii) counsel for the Committee; (iii) counsel for the Prepetition Agent; (iv) the United States Attorney's Office for the District of New York; and (v) any party requesting notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such

notice is sufficient, and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Bid Procedures Order, (ii) following the Sale Hearing, enter the Sale Order, and (iii) grant such other and further relief as is just and proper.

Dated: October 1, 2020
      New York, New York

Respectfully submitted,

*/s/ Lucy F. Kweskin*
_____

Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email: lkweskin@proskauer.com
Email: mskrzynski@proskauer.com

-and-

Jeff J. Marwil (admitted *pro hac vice*)
Brooke H. Blackwell (admitted *pro hac vice* )
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551
Email: jmarwil@proskauer.com
Email: bblackwell@proskauer.com

-and-

Peter J. Young (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 577-2193
Email: pyoung@proskauer.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

19

## EXHIBIT A

**Proposed Bid Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re**<br><br>**CENTURY 21 DEPARTMENT STORES LLC,**<br>***et al.*,**<br><br>　　　　　**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 20-12097 (SCC)**<br><br>**(Jointly Administered)**<br><br>**Relates to Docket No. [___]** |

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING AUCTION AND BID PROCEDURES FOR THE SALE OF CERTAIN INTELLECTUAL PROPERTY

Upon consideration of the motion (the "Motion")[2] the above-captioned debtors and debtors and possession (collectively, the "Debtors") for entry of an order, pursuant to pursuant to 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors to implement solicitation, bid, and auction procedures for the sale (the "Sale") of certain of the Debtors' Intellectual Property (as defined below) on the terms set forth in the bidding procedures annexed hereto as **Exhibit 1** (the "Bid Procedures") and (ii) granting related relief; and this Court having determined that the relief set forth in this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire

---

[1]　　The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

[2]　　Capitalized terms not defined herein shall have the meanings provided to them in the Motion or the Bid Procedures, as applicable.

record in these Chapter 11 Cases; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Bid Procedures, substantially in the form attached as **Exhibit 1**, are approved in their entirety.   The Bid Procedures were proposed in good faith, are fair and reasonable and reasonably calculated to produce the best and highest offers for the Intellectual Property, and will confer actual benefits upon the Debtors' estates.  The Bid Procedures represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.  The Bid Procedures shall govern the submission and analysis of all bids relating to the proposed sale of the Intellectual Property.  The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

2.      The Debtors are authorized, but not obligated, in an exercise of their business judgment, and in consultation with the Consultation Parties, to at any time but no later than two (2) business days prior to the Auction, (a) select one or more Qualified Bidders to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, (x) provide a breakup fee, (y) agree to reimburse the reasonable and documented out of pocket fees and expenses and/or (z) agree to pay a "work fee" or other similar cash fee ((x)-(z) collectively, the "Bid Protections"); *provided*, however, that any Bid Protections shall be reasonably acceptable to the Prepetition Agent.[3]

---

[3]      The Debtors shall consult with the U.S. Trustee and counsel for the Committee at least one (1) day prior to providing such Bid Protections.

3.      Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are waived.

4.      Objections (if any) to approval of a Sale shall be in writing, set forth the name of the objecting party, the basis for the objection and specific grounds therefor, and be filed with the Court on or before the Sale Objection Deadline.  Any objection not filed and served in accordance with the preceding sentence shall be deemed waived and shall be forever barred, and such party shall be deemed to have consented to the Sale.

5.      The terms of this Order shall control to the extent of any conflict with the Motion.

6.      The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATE BANKRUPTCY JUDGE

## <u>SCHEDULE I TO BID PROCEDURES ORDER</u>

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CENTURY 21 DEPARTMENT STORES LLC,
*et al*.,

Debtors.[1]

Chapter 11

Case No. 20-12097 (SCC)

(Jointly Administered)

## BID PROCEDURES FOR THE SALE OF CERTAIN INTELLECTUAL PROPERTY

The Debtors are seeking to sell all of their various intellectual property assets consisting of, without limitation, trademarks, domain names, customer files and related transaction data, social media assets and internet protocol addresses (collectively, the "Intellectual Property") or any portion thereof, free and clear of all liens, claims, interests, or other encumbrances in accordance with the following solicitation, bid and auction procedures (collectively, the "Bid Procedures").

### I.    SOLICITATION PROCESS; DISTRIBUTION OF BID PROCEDURES

The Debtors and/or any agent of the Debtors shall, at the Debtors' direction, distribute these Bid Procedures to any potentially interested bidders for the Intellectual Property. The Debtors, in the exercise of their reasonable business judgment may elect to exclude any portion of the Intellectual Property from these Bid Procedures and sell such Intellectual Property at either a private or public sale, subject to Court approval of any alternative sale method. Furthermore, the Debtors may determine in their discretion (upon consultation with the Consultation Parties), whether to proceed with a sale of any Intellectual Property pursuant to these Bid Procedures.

Notwithstanding anything herein to the contrary, all consultation, notification, or other rights of the Consultation Parties are subject to, and expressly qualified by, any confidentiality obligation or agreement entered into with any Potential Bidder (as defined herein).

### II.    PARTICIPATION REQUIREMENTS.

#### A.  Potential Bidders.

---

[1]    The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033). The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in the Intellectual Property or any portion of the Intellectual Property must deliver to each of the Debtors' advisors the following documents and information (unless the Debtors, in their business judgment, choose to waive any of the following requirements for such party):

1.      an executed confidentiality agreement to the extent such party has not already executed a confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

2.      identification of the party and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated sale of the Intellectual Property (each a "Sale Transaction"); and

3.      proof by the party of its financial capacity to close a proposed Sale Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the bidder (or, if the bidder is an entity formed for the purpose of acquiring the desired Intellectual Property, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors).

The Debtors, in consultation with their advisors, will determine and notify such party whether such party has satisfied the foregoing requirements, in which case it shall be deemed a "Potential Bidder".
.

**B. Obtaining Due Diligence.**

The Debtors, with their advisors, shall establish an electronic data room (the "Data Room") that provides standard and customary diligence materials, including the necessary information to allow Potential Bidders to submit a Qualified Bid (as defined below) and to seek and obtain commitments for debt financing.

Only Potential Bidders shall be eligible to receive diligence materials and access to the Data Room and to additional non-public information regarding the Debtors and the Intellectual Property. The Debtors (with the assistance of their advisors) shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* (i) the Debtors shall have the right to reasonably limit the information and due diligence provided to competitors and (ii) the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate a proposed Sale Transaction. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtors. The Debtors, their representatives and advisors are not responsible for, and will bear no liability with respect to, any information obtained by any Potential Bidder in connection with any Sale or Sale Transaction.

**C. Bid Deadline.**

An bidder that desires to make a bid must transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **2:00 p.m. (prevailing Eastern Time) on [Monday, November 16], 2020** (the "Bid Deadline"):

        (i)     the Debtors' proposed bankruptcy counsel, Jeff J. Marwil (jmarwil@proskauer.com), Peter J. Young (pyoung@proskauer.com), and Lucy F. Kweskin (lkweskin@proskauer.com); and

        (ii)    the Debtors' proposed agent for the sale of the Intellectual Property, David Peress (dperess@hilcoglobal.com) and Richelle Kalnit (rkalnit@hilcoglobal.com).

The Debtors will provide copies of all Bids via electronic mail as soon as reasonably practicable to the Consultation Parties, subject to any confidentiality obligation or agreement entered with the Potential Bidders.

**D. Milestone Bid**

Notwithstanding anything to the contrary in these Bid Procedures, in order to comply with the Milestones (as defined in the Cash Collateral Order), by October 30, 2020, the Debtors must have received at least one Bid (as defined below) for the Intellectual Property that satisfies the Requirements (as defined below) for the Intellectual Property (a "Milestone Bid"). The Prepetition Agent, in its sole discretion, may determine that a Bid that does not otherwise meet the Requirements constitutes a Milestone Bid. For the avoidance of doubt, if a Stalking Horse Bidder is selected by October 30, 2020 in accordance with the procedures set forth herein, its Bid shall constitute a Milestone Bid.

**III. QUALIFIED BIDS.**

**A. Requirements for Qualified Bids.**

Any proposal, solicitation, or offer (each, a "Bid") submitted by a bidder (a "Bidder") will be considered a qualified bid (a "Qualified Bid" and such entity a "Qualified Bidder") only if the Bid is submitted in writing by, by the Bid Deadline, and is deemed to comply with all of the following in the Debtors' business judgment (collectively, the "Requirements"):

    1.   ***Assets.*** The Bid must clearly identify the following: (a) the particular Intellectual Property, or the portion thereof identified with reasonable specificity, to be purchased and/or liquidated or otherwise disposed of; and (b) the liabilities and obligations to be assumed, including any debt to be assumed.

    2.   ***Purchase Price.*** The Bid must (a) clearly set forth the purchase price to be paid (the "Purchase Price") and (b) identify separately the cash component of the

Purchase Price and each noncash component of the Purchase Price; *provided that*, to be a Qualified Bid, a Bid that includes a noncash component shall provide for Payment in Full (as defined in the Cash Collateral Order) in cash of the outstanding ABL Obligations (as defined in the Cash Collateral Order) on the date of the Sale closing or be subject to the Prepetition Agent's reasonable consent.

3. *Deposit.* Each Bid must be accompanied by a cash deposit in the amount equal to ten (10) percent of the aggregate Purchase Price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Qualified Bidder Deposit"); *provided* that if a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder or Backup Bidder (each as defined herein), such Qualified Bidder must increase its Qualified Bidder Deposit to match the proposed Purchase Price submitted at the Auction within three (3) business days after the Auction.

4. *Bid Documents.* Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include: (a) a purchase agreement setting forth the definitive terms of the proposed Sale, (b) a schedule of Assumed Contracts to the extent applicable to the Bid, (c) any other material documents integral to such Bid, and (d) a statement from the bidder that: (y) it is prepared to enter into and consummate the Transactions contemplated in the Bid Documents no later than [twenty (20)] days after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline) and (z) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Backup Bid) until the consummation of the Sale Transaction.

5. *Legal Capacity.* Each Bid must demonstrate to the Debtors' satisfaction that the Bidder has the legal capacity to consummate the transaction it is proposing.

6. *Committed Financing.* To the extent that a Bid is not accompanied by evidence of the bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include committed financing documented to the satisfaction of the Debtors (upon consultation with the Consultation Parties) that demonstrates that the bidder has received sufficient unconditional debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its Bid, including providing adequate assurance of future performance under all contracts proposed to be Assumed Contracts by such Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties.

4

7.  *Contingencies.* The Bid must not contain any contingencies as to the validity, effectiveness, and/or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline.

8.  *Identity.* The Bid must fully disclose the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each principle, equity holder or financial provider or backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Potential Bidder, Bidder, or Qualified Bidder, and/or any officer or director of the foregoing.

9.  *Irrevocable.* ALL BIDS SHALL BE DEEMED IRREVOCABLE. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.

10. *Backup Bidder.* By submitting a Bid, each Bidder agrees to be a Backup Bidder (as defined below) in the event the Debtors select it as such.

11. *As-Is, Where-Is.* The Bid must include the following representations and warranties (or the Bidder otherwise agrees that such representations and warranties may be incorporated into the applicable Bid Documents should the Bid be selected as the Successful Bid): (a) expressly state that the bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Intellectual Property prior to submitting its Bid; and (b) a statement that the Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Intellectual Property in making its Bid and did not rely on any of the Debtors' or any of their advisors' written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Intellectual Property or the completeness of any information provided in connection therewith, except (with respect to the Debtors only) as expressly stated in the representations and warranties contained in the Bid Documents ultimately accepted and executed by the Debtors.

12. *Authorization.* The Bid must include evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtors with respect to the submission, execution, and delivery of its Bid, participation in the Auction, and closing of the proposed

transaction(s) contemplated in such Bid. The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Bidder.

13. ***Disclaimer of Fees***. Other than a Stalking Horse Bidder selected in accordance with the procedures set forth herein, each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

14. ***Adherence to Bid Procedures.*** Each Bid must include (a) a statement that the Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code, and (b) that the Bid constitutes a *bona fide* offer to consummate the proposed transactions, and agrees to be bound by these Bid Procedures.

15. ***No Collusion.*** The Bidder must acknowledge in writing that (a) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Bidders or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

16. ***Closing Date***. Each bid must state the date on which the Bidder expects to consummate the Sale.

17. ***Other Information.*** The Bid contains such other information as may be reasonably requested by the Debtors.

## B.  Rejection of "Qualified Bid" Status for Non-Conforming Bids.

The Debtors shall determine in their discretion in consultation with the Consultation Parties whether a Bid qualifies as a Qualified Bid or whether such Bid shall be rejected as a non-conforming bid.  In addition, the Debtors shall have the right to negotiate with any Bidder with respect to clarification of any Bid.

## C.  No Representation; Qualified Bidder's Duty to Review.

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the

Intellectual Property, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Intellectual Property with governmental laws, the truth, accuracy, or completeness of any documents related to the Intellectual Property, or any other information provided by or on behalf of the Debtors to any Potential Bidder, Bidder or Qualified Bidder, or any other matter or thing regarding the Intellectual Property.  All Qualified Bidders must acknowledge and agree that upon closing of the Sale, the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Intellectual Property, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale.  Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Intellectual Property or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale.

## IV.    QUALIFICATION OF BIDDERS.

No later than 11:59 p.m. (prevailing Eastern Time) on the date that is two (2) business days following the Bid Deadline, the Debtors shall notify each Bidder whether such party is a Qualified Bidder.  The Debtors reserve the right to (but have no obligation to) cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

If any Bid is determined by the Debtors (after consultation with the Consultation Parties) not to be a Qualified Bid, the Debtors will refund such Bidder's Qualified Bidder Deposit on or before the date that is five (5) business days after the Bid Deadline or as soon as practicable thereafter.

The Debtors may, in consultation with the Consultation Parties accept as a single Qualified Bid, multiple Bids for non-overlapping material portions of the Intellectual Property such that, when taken together in the aggregate, such Bids would otherwise meet the standards for a single Qualified Bid.  The Debtors may permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Intellectual Property but who were not identified as a component of a single Qualified Bid consisting of such multiple Bids, to participate in the Auction and to submit higher or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping material portions of the Intellectual Property, as part of such a single Qualified Bid for Overbid (as defined herein) purposes.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided that* any Qualified Bid may be improved at the

Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such Bidder is no longer a Qualified Bidder or that a Bid made by such Bidder is not a Qualified Bid.

## V.    RIGHT TO CREDIT BID.

Any Qualified Bidder who has a valid and perfected lien on any Intellectual Property (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided that* a Secured Creditor shall have the right to credit bid its claim only for the collateral by which such Secured Creditor is secured; *provided further* the party submitting the credit bid must agree to add cash to its bid in an amount sufficient to pay the commission and expenses due to Hilco Streambank.

Notwithstanding anything to the contrary herein, the Prepetition Agent (on behalf of the Prepetition Lenders (as defined in the First Day Declaration)), shall be deemed to be a Qualified Bidder and, subject to section 363(k) of the Bankruptcy Code, may submit a credit bid of all or any portion of the aggregate amount of such Prepetition Lenders' secured claims pursuant to section 363(k) at any time during the Auction and any such credit bid will be considered a Qualified Bid, unless otherwise ordered by the Court for cause.

## VI.    SELECTION OF STALKING HORSE BID AND BID PROTECTIONS.

Upon entry of the Order, at any time but no later than two (2) business days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, and in consultation with the Consultation Parties, to (a) select one or more Qualified Bidders to act as a stalking horse bidder in connection with the Auction (the "Stalking Horse Bidder") and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, (x) provide a breakup fee, (y) agree to reimburse the reasonable and documented out of pocket fees and expenses and/or (z) agree to pay a "work fee" or other similar cash fee ((x)-(z) collectively, the "Bid Protections"); *provided*, however, that any Bid Protections are reasonably acceptable to the Prepetition Agent.[2] Any such stalking horse Bid Protections are authorized pursuant to the Order.

## VII.    THE AUCTION.

---

[2]    The Debtors shall consult with the U.S. Trustee and counsel for the Committee at least one (1) day prior to providing such Bid Protections.

If the Debtors receive more than one Qualified Bid for any particular Asset or portion of Intellectual Property, the Debtors shall conduct the Auction to determine the Successful Bidder with respect to such Intellectual Property or portion of Intellectual Property.  One day prior to the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid(s), as determined in the Debtors' reasonable business judgment and in consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, but not limited to, among other things: (a) the specific terms of such Qualified Bidder's Bid Documents including the type and portion of the Intellectual Property sought and Assumed Obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transactions contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the ability and likelihood to close the transaction contemplated by the Qualified Bid (collectively, the "Bid Assessment Criteria").

## A.  Auction Participation

1. <u>Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction</u>. The Auction shall take place on **[November 19], 2020 at 10:00 a.m.** or such later time as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all Qualified Bidders, and other invitees.  The Auction will be conducted by video conference, the detail of which will be provided to Qualified Bidders in advance of the Auction. The Debtors shall have the right to conduct any number of Auctions on that date to accommodate multiple bids that comprise a single Qualified Bid, if the Debtors determine, in their business judgment and upon consultation with the Consultation Parties, that conducting such auctions would be in the best interests of the Debtors' estates.

2. <u>Participants and Attendees</u>.[3] Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bid Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. The Auction will be conducted openly and all creditors may be permitted to attend; *provided that* the Debtors may, in their sole and exclusive discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. Any creditor wishing to attend the Auction may do so by contacting, no later than three (3) business days prior to the start of the

---

[3]      Unless the Bankruptcy Court orders or directs otherwise, only the Debtors' representatives, any other parties that the Debtors have invited specifically, the Consultation Parties and any Qualified Bidders and the professionals for each of the foregoing shall be entitled to attend the Auction; *provided* that only Qualified Bidders shall be entitled to bid at the Auction.

Auction, the Debtors' advisors. The Consultation Parties are permitted to attend the Auction without any further request or notice.

## B. Auction Procedures.

The Debtors (in consultation with their advisors) shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis in the presence of all other Qualified Bidders, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; *provided that* any Overbid (including with respect to any Backup Bid (as defined below) must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher or otherwise better Qualified Bid as the Leading Bid. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction. The Debtors shall maintain a written transcript of the Auction and of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid (as defined below). The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment:

1. *Baseline Bid as Price Floor*. The first round of bidding at the Action shall commence at the amount of the Baseline Bid.

2. *Highest or Best Offer*. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the Bid that they believe in their reasonable business judgment and upon consultation with their advisors and the Consultation Parties to be the highest or otherwise best offer for the relevant Intellectual Property (the "Leading Bid"). Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.

3. *Minimum Overbid*. Qualified Bidders may submit successive Bids, based on and increased from the Baseline Bid or the Leading Bid (as applicable) for the relevant Intellectual Property (each such Bid, an "Overbid"). Any Qualified Bidder's initial Overbid and each subsequent Overbid shall be (a) at least a $100,000 increase in cash consideration over the Leading Bid *plus* (b) if Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections (the "Minimum Overbid"). The Debtors may, in their reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors deem equivalent that exceeds the then Leading Bid by at least the Minimum Overbid Amount.

10

4. ***Announcement of Rules***. At commencement of the Auction, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s).

5. ***Overbid Alterations***. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bid Procedures.

6. ***Rejection of Bids***. The Debtors, in their reasonable business judgment may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

7. ***Additional Information***. The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction.

8. ***Modification of Procedures***. The Debtors may (in consultation with the Consultation Parties) announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bid Procedures.

9. ***No Collusion***. Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## C. Adjournment of the Auction.

The Debtors reserve the right, in their reasonable business judgment and upon consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale Transaction(s) at the prevailing Bid amount.

### D.  Selection of Successful Bidder and Backup Bidder

Immediately prior to the conclusion of the Auction, the Debtors (including their independent director) shall (i) determine, consistent with these Bid Procedures and the Bid Assessment Criteria and upon consultation with their advisors and the Consultation Parties, which Bid constitutes (a) the highest or otherwise best bid(s) for the applicable Intellectual Property (each such Bid, a "Successful Bid" and the Qualified Bidder submitting such bid, the "Successful Bidder") and (b) which Bid constitutes the next highest or otherwise best Qualified Bid(s) after the Successful Bid (each such Bid, a "Backup Bid" and the Qualified Bidder submitting such bid, the "Backup Bidder") and (ii) notify all Qualified Bidders at the Auction for the applicable Intellectual Property of the identity of the Successful Bidder, the amount of the Purchase Price and other material terms of the Successful Bid, the identity of the Backup Bidder, and the amount of the Purchase Price and other material terms of the Backup Bid.

The terms of the Successful Bid(s) and the Backup Bid(s) shall be reasonably acceptable to the Prepetition Agent; *provided that* the Debtors shall not be required to consult with or obtain consent from the Prepetition Agent in selecting the Successful Bid or Backup Bid for any Qualified Bid that provides for Payment in Full (as defined in the Cash Collateral Order) in cash of the outstanding ABL Obligations (as defined in the Cash Collateral Order) on the date of the Sale closing.

The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder 11:59 p.m. (prevailing Eastern Time) on the date that is one business day following the date the Auction is closed.

### E.  Backup Bidder.

If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

## VIII.   ACCEPTANCE OF SUCCESSFUL BID.

Within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Debtors' presentation of a particular Successful Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing (as defined below). The Debtors shall seek approval by the Court to consummate the Backup Bid, solely in the event the Successful Bidder fails to close the transaction as required and with all rights reserved against the Successful Bidder.

### F.  FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES.

Except as provided for in a Successful Bidder's Bid Documents, all rights, titles and interests in and to the Intellectual Property subject thereto shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "Encumbrances"), subject only to the Assumed Liabilities (as defined in the Successful Bidder's Bid Documents), if any, in accordance with Bankruptcy Code section 363(f), with such Encumbrances to attach to the proceeds (if any) received by the Debtors from the Sale of the Intellectual Property in accordance with the Bankruptcy Code, applicable non-bankruptcy law and any prior orders of the Court.

### G.  CASH COLLATERAL ORDER

Notwithstanding anything herein, all cash proceeds generated from the Sale of any Intellectual Property shall be paid in accordance with the Intellectual Property Proceeds Waterfall (as defined in the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; and (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 32] (as may be amended, modified or superseded by final order, the "Cash Collateral Order").  Nothing in these Bid Procedures shall amend, modify, or impair any provision of the Cash Collateral Order, or the rights of the Debtors, Prepetition Agent or Prepetition Lenders.

### H.  COMMISSIONS.

The Debtors shall be under no obligation to pay a commission to any agent(s), advisor(s), or broker(s), except, with respect to Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and sell the Debtors' Intellectual Property assets.  All commissions, fees, or expenses for agents other than Hilco Streambank, shall be the sole responsibility of such Bidders at such Bidder's discretion. In no case shall any commissions, fees, or expenses be deducted from any proceeds derived from the Sale of the Intellectual Property or the agreed Successful Bid other than to the extent set forth in the Order.

### I.  NOTICE PARTIES.

The term "Notice Parties" as used in these Bid Procedures shall mean:

(iii)    the Debtors' proposed bankruptcy counsel, Jeff J. Marwil (jmarwil@proskauer.com), Peter J. Young (pyoung@proskauer.com), and Lucy F. Kweskin (lkweskin@proskauer.com);

(iv)    the Debtors' proposed agent for the sale of the Intellectual Property, David Peress (dperess@hilcoglobal.com) and Richelle Kalnit (rkalnit@hilcoglobal.com);

(v)    counsel to the Prepetition Agent, Julia Frost-Davies (julia.frost-davies@morganlewis.com) and David M. Riley (david.riley@morganlewis.com);

13

(vi)    counsel to the Committee, Jeffrey L. Cohen (jcohen@lowenstein.com), Lindsay H. Sklar (lsklar@lowenstein.com), and Brent Weisenberg (bweisenberg@lowenstein.com); and

(vii)   the U.S. Trustee.

## J.  SALE HEARING.

A hearing to consider the sale of the Debtors' Intellectual Property to the Successful Bidder(s), or Backup Bidder(s) (if applicable) (the "Sale Hearing") is currently scheduled to take place on [December 1], 2020 at [●], (prevailing Eastern Time), before the Honorable Shelley C. Chapman, United States Bankruptcy Court for the Southern District of New York (Manhattan Division), One Bowling Green New York, NY 10004-1408. **Any party who wishes to attend is required to make arrangements through Court Solutions at www.court-solutions.com or by telephone: (917) 746-7476.**

**The Sale Hearing may be continued to a later date by the Debtors (in consultation with the Consultation Parties) by sending notice prior to, or making an announcement at, the Sale Hearing.  Any continuance shall be filed on the docket but no further notice of such continuance will be required to be provided to any party.**

## K.  RETURN OF DEPOSIT.

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or before the date that is five business days after the Auction.

The Backup Bidder's Qualified Bidder Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to consummate the Sale Transaction(s) set forth in the Successful Bid and the Debtors opt to close on the Sale Transaction(s) set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the Purchase Price of such transaction(s) at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

## L.  Consultation Parties

The "Consultation Parties" shall be the Prepetition Agent, counsel to the Committee and counsel to any other statutory committee appointed in the Chapter 11 Cases; *provided that* in the event the Prepetition Agent determines to bid for any of the Intellectual Property, the Prepetition Agent shall no longer be a Consultation Party; *provided further that* any member of the Committee

14

that submits a Bid shall not participate in any deliberations by the Committee as a Consultation Party nor have access to information shared with the Committee about the Sale process.

### M. RESERVATION OF RIGHTS.

The Debtors reserve their rights to modify these Bid Procedures in their reasonable business judgment and upon consultation with the Consultation Parties in any manner that will best promote the goals of the bidding process, serve the best interests of the estate, or impose, at or prior to the conclusion of the Auction, additional customary terms and conditions on the sale of the Intellectual Property, including, without limitation to (i)  seek approval of the Sale of portions of the Intellectual Property through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors to obtain the highest value for the Intellectual Property; (ii) revise the qualifications necessary for a Qualified Bidder and Qualified Bid, (iii) determine which bidders are Qualified Bidders and which bids are Qualified Bids; (iv) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (vi) remove some or all of the Intellectual Property from the Auction(s); (vii) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction(s) and/or Sale Hearing in open court without further notice; and (xi) modify the Bid Procedures as they may determine to be in the best interests of their estates or to withdraw this Motion at any time with or without prejudice.

### N.  CONSENT TO JURISDICTION.

All Potential Bidders, Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

### O.  FIDUCIARY OUT.

Nothing in these Bid Procedures shall require the Debtors' (or any other debtors') management or board of directors to take any action or to refrain from taking any action with respect to these Bid Procedures when the Debtors' management or board of directors (or other debtors' management or board of directors) determine, based on the advice of their counsel, that taking such action or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law.