**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **Chapter 11** |
| **CENTURY 21 DEPARTMENT STORES LLC,** *et al.*, | **Case No. 20-12097 (SCC)** |
| Debtors.[1] | **(Jointly Administered)** |
| | **Relates to Docket No. 101** |

### ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING AUCTION AND BID PROCEDURES FOR THE SALE OF CERTAIN INTELLECTUAL PROPERTY

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors and possession (collectively, the "Debtors") for entry of an order, pursuant to sections

105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (i) authorizing the Debtors to implement solicitation, bid, and auction

procedures for the sale (the "Sale") of certain of the Debtors' Intellectual Property on the terms set

forth in the bidding procedures annexed hereto as **Exhibit 1** (the "Bid Procedures") and (ii)

granting related relief; and the Order directing the U.S. Trustee to Appoint Consumer Privacy

Ombudsman [ECF No. 176], and Appointment of Consumer Privacy Ombudsman Lucy L.

Thompson [ECF No. 181]; and this Court having determined that the relief set forth in this Order

---

[1]    The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

[2]    Capitalized terms not defined herein shall have the meanings provided to them in the Motion or the Bid Procedures (defined below), as applicable.

is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire record in these Chapter 11 Cases; the Court finding that the Bid Procedures were proposed in good faith, are fair and reasonable and reasonably calculated to produce the highest or otherwise best offers for the Intellectual Property, and will confer actual benefits upon the Debtors' estates; and the Court's further finding that the Bid Procedures represent an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Bid Procedures, substantially in the form attached as **Exhibit 1**, are approved in their entirety.  The Bid Procedures shall govern the submission and analysis of all bids relating to the proposed sale of the Intellectual Property.  The Debtors are authorized to take any and all actions reasonably necessary to implement the Bid Procedures.

3.      In connection with the sale of the Intellectual Property, the Debtors are authorized, but not directed, to engage former employees (not including members of the Gindi family) to act as consultants (the "Consultants") with respect to the Intellectual Property and in discussions with potentially interested parties regarding the Intellectual Property and operations of the Debtors. Compensation for Consultants shall be determined by the Debtors' independent director and Hilco Streambank, but shall not exceed $10,000 in the aggregate.

4.      Subject to Section XIX of the Bidding Procedures, the Debtors are authorized, but not obligated, in an exercise of their reasonable business judgment and in consultation with the

Consultation Parties, to select one or more Qualified Bidders to act as stalking horse bidder(s) in connection with the Auction (each a "Stalking Horse Bidder").  In connection with a stalking horse agreement with any Stalking Horse Bidder, the Debtors may, subject to the reasonable consent of the Consultation Parties and upon one (1) days' prior notice to the U.S. Trustee, agree to (x) provide the Stalking Horse Bidder with a reasonable breakup fee, and/or (y) reimburse the Stalking Horse Bidder for the reasonable and documented out of pocket fees and expenses, (x) and (y) collectively, the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court.  In the event the Debtors seek to provide Bid Protections to a Stalking Horse Bidder, the Debtors shall file a notice with the Court with the requested Bid Protections and seek a hearing on an expedited basis (including the same day as requested) so long as notice of such hearing is provided to the Prepetition Agent, U.S. Trustee and the Official Committee of Unsecured Creditors and filed on the docket of the Debtors' cases.

5.    Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are waived.

6.    All of the deadlines set forth in the Bidding Procedures are hereby approved.

7.    Objections (if any) to approval of a Sale shall be in writing, set forth the name of the objecting party, the basis for the objection and specific grounds therefor, and be filed with the Court on or before November 25, 2020.  Any objection not filed and served in accordance with the preceding sentence shall be deemed waived and shall be forever barred, and such party shall be deemed to have consented to the Sale.

8.      The procedures set forth in the Bidding Procedures with respect to the Assumed

Contracts are approved in their entirety.

9.      The terms of this Order shall control to the extent of any conflict with the Motion.

10.     The Court retains jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, or enforcement of this Order.

Dated: October 30, 2020

New York, New York

/S/ Shelley C. Chapman

THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATE BANKRUPTCY JUDGE

## <u>SCHEDULE I TO BID PROCEDURES ORDER</u>

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **Chapter 11** |
| **CENTURY 21 DEPARTMENT STORES LLC,** *et al.,* | **Case No. 20-12097 (SCC)** |
| Debtors.[1] | **(Jointly Administered)** |

<u>**BID PROCEDURES FOR THE SALE OF CERTAIN INTELLECTUAL PROPERTY**</u>

The Debtors are seeking to sell all of their various intellectual property assets consisting of, without limitation, trademarks, domain names, customer files and related transaction data, social media assets and internet protocol addresses (collectively, the "<u>Intellectual Property</u>") or any portion thereof, free and clear of all liens, claims, interests, or other encumbrances (other than the executory contracts to be assumed by the Successful Bidder, (the "<u>Assumed Contracts</u>")) in accordance with the following solicitation, bid and auction procedures (collectively, the "<u>Bid Procedures</u>").

## I.    SOLICITATION PROCESS; DISTRIBUTION OF BID PROCEDURES

The Debtors and/or any agent of the Debtors shall, at the Debtors' direction, distribute these Bid Procedures to any potentially interested bidders for the Intellectual Property. The Debtors, in the exercise of their reasonable business judgment and after consultation with the Consultation Parties, may elect to exclude any portion of the Intellectual Property from these Bid Procedures and sell such Intellectual Property at either a private or public sale, subject to Court approval of any alternative sale method.    Furthermore, the Debtors may determine in their discretion (upon consultation with the Consultation Parties), whether to proceed with a sale of any Intellectual Property pursuant to these Bid Procedures.

## II.    PARTICIPATION REQUIREMENTS

### A.    Potential Bidders

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in the Intellectual Property or any portion of the Intellectual Property must deliver to each of the Debtors' advisors the following documents and information (unless the

---

[1]    The Debtors in these chapter 11 cases (the "<u>Chapter 11 Cases</u>"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

Debtors, in their business judgment, choose to waive any of the following requirements for such party):

1. an executed confidentiality agreement to the extent such party has not already executed a confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

2. identification of the party and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated sale of the Intellectual Property (each a "Sale Transaction"); and

3. proof by the party of its financial capacity to close a proposed Sale Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the bidder (or, if the bidder is an entity formed for the purpose of acquiring the desired Intellectual Property, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (and their advisors).

The Debtors will provide a list of all potential bidders to the Consultation Parties within one (1) business day of a request for same. The Debtors, in consultation with their advisors and the Consultation Parties, will determine and notify such party whether such party has satisfied the foregoing requirements, in which case it shall be deemed a "Potential Bidder".
.

**B. Obtaining Due Diligence**

The Debtors, with their advisors, shall establish an electronic data room (the "Data Room") that provides standard and customary diligence materials, including the necessary information to allow Potential Bidders to submit a Qualified Bid (as defined below) and to seek and obtain commitments for debt financing.

Only Potential Bidders shall be eligible to receive diligence materials and access to the Data Room and to additional non-public information regarding the Debtors and the Intellectual Property. The Debtors (with the assistance of their advisors) shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* (i) the Debtors (in consultation with the Consultation Parties) shall have the right to reasonably limit the information and due diligence provided to competitors and (ii) the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate a proposed Sale Transaction. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtors. The Debtors, their representatives and advisors are not responsible for, and will bear no liability with respect to, any information obtained by any Potential Bidder in connection with any Sale or Sale Transaction.

### C.  Bid Deadline

An bidder that desires to make a bid must transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **2:00 p.m. (prevailing Eastern Time) on Monday, November 16, 2020** (the "<u>Bid Deadline</u>"):

(i)    the Debtors' proposed bankruptcy counsel, Jeff J. Marwil (jmarwil@proskauer.com), Peter J. Young (pyoung@proskauer.com), and Lucy F. Kweskin (<u>lkweskin@proskauer.com</u>); and

(ii)    the Debtors' proposed agent for the sale of the Intellectual Property, David Peress    (dperess@hilcoglobal.com)    and    Richelle    Kalnit (rkalnit@hilcoglobal.com).

The Debtors will provide copies of all Bids via electronic mail to counsel for the Consultation Parties within one (1) business day of receipt.

### D.  Milestone Bid

Notwithstanding anything to the contrary in these Bid Procedures, in order to comply with the Milestones (as defined in the Cash Collateral Order), by November 13, 2020, the Debtors must have received at least one Bid (as defined below) for the Intellectual Property that satisfies the Requirements (as defined below) for the Intellectual Property (a "<u>Milestone Bid</u>").  The Prepetition Agent, in its sole discretion, may determine that a Bid that does not otherwise meet the Requirements constitutes a Milestone Bid.  For the avoidance of doubt, if a Stalking Horse Bidder is selected in accordance with the procedures set forth herein, its Bid shall constitute a Milestone Bid.

## III.    QUALIFIED BIDS

### A.  Requirements for Qualified Bids

Any proposal, solicitation, or offer (each, a "<u>Bid</u>") submitted by a bidder (a "<u>Bidder</u>") will be considered a qualified bid (a "<u>Qualified Bid</u>" and such entity a "<u>Qualified Bidder</u>") only if the Bid is submitted in writing by, the Bid Deadline, and is deemed to comply with all of the following in the Debtors' reasonable business judgment and in consultation with the Consultation Parties (collectively, the "<u>Requirements</u>"):

1. *Assets*.  The Bid must clearly identify the following: (a) the particular Intellectual Property, or the portion thereof identified with reasonable specificity, to be purchased and/or liquidated or otherwise disposed of; and (b) the liabilities and obligations to be assumed, including any debt to be assumed.

2. *Purchase Price.* The Bid must (a) clearly set forth the purchase price to be paid (the "<u>Purchase Price</u>") and (b) identify separately the cash component of the Purchase Price and each noncash component of the Purchase Price; *provided*

*that*, to be a Qualified Bid, a Bid that includes a noncash component shall provide for Payment in Full (as defined in the Cash Collateral Order) in cash of the outstanding ABL Obligations (as defined in the Cash Collateral Order) on the date of the Sale closing or be subject to the Prepetition Agent's reasonable consent.

3. *Deposit*. Each Bid must be accompanied by a cash deposit in the amount equal to ten (10) percent of the aggregate Purchase Price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Qualified Bidder Deposit"); *provided* that if a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder or Backup Bidder (each as defined herein), such Qualified Bidder must increase its Qualified Bidder Deposit to match the proposed Purchase Price submitted at the Auction within three (3) business days after the Auction.

4. *Bid Documents.* Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include: (a) a purchase agreement setting forth the definitive terms of the proposed Sale, (b) a schedule of Assumed Contracts to the extent applicable to the Bid, (c) any other material documents integral to such Bid, and (d) a statement from the bidder that: (y) it is prepared to enter into and consummate the Transactions contemplated in the Bid Documents no later than ten (10) days following entry of an order approving the Sale and (z) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or the Backup Bid) until the consummation of the Sale Transaction.

5. *Legal Capacity.* Each Bid must demonstrate to the Debtors' satisfaction that the Bidder has the legal capacity to consummate the transaction it is proposing.

6. *Committed Financing.* To the extent that a Bid is not accompanied by evidence of the bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include documentation of committed financing satisfactory to the Debtors (upon consultation with the Consultation Parties) that demonstrates that the bidder has received sufficient unconditional debt and/or equity funding commitments to satisfy the bidder's Purchase Price and other obligations under its Bid, including providing adequate assurance of future performance under all contracts proposed to be Assumed Contracts by such Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties.

7. *Contingencies.* The Bid must not contain any contingencies as to the validity, effectiveness, and/or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline.

8. *Identity.* The Bid must fully disclose the legal identity of each person or entity bidding or otherwise participating in connection with such Bid (including each principle, equity holder or financial provider or backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed transaction(s) contemplated by such Bid), and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Potential Bidder, Bidder, or Qualified Bidder, and/or any officer or director of the foregoing.

9. *Irrevocable*. ALL BIDS SHALL BE DEEMED IRREVOCABLE.  IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.

10. *Backup Bidder.* By submitting a Bid, each Bidder agrees to be a Backup Bidder (as defined below) in the event the Debtors select it as such.

11. *As-Is, Where-Is.* The Bid must include the following representations and warranties (or the Bidder otherwise agrees that such representations and warranties may be incorporated into the applicable Bid Documents should the Bid be selected as the Successful Bid): (a) expressly state that the bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Intellectual Property prior to submitting its Bid; and (b) a statement that the Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Intellectual Property in making its Bid and did not rely on any of the Debtors' or any of their advisors' written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Intellectual Property or the completeness of any information provided in connection therewith, except (with respect to the Debtors only) as expressly stated in the representations and warranties contained in the Bid Documents ultimately accepted and executed by the Debtors.

12. *Authorization.* The Bid must include evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtors with respect to the submission, execution, and delivery of its Bid, participation in the Auction, and closing of the proposed transaction(s) contemplated in such Bid. The Bid shall further state that any

necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Bidder.

13. *Disclaimer of Fees*. Other than a Stalking Horse Bidder selected in accordance with the procedures set forth herein, each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, other than a Stalking Horse Bidder selected in accordance with the procedures set forth herein, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

14. *Adherence to Bid Procedures*. Each Bid must include (a) a statement that the Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code, and (b) that the Bid constitutes a *bona fide* offer to consummate the proposed transactions, and agrees to be bound by these Bid Procedures.

15. *No Collusion*. The Bidder must acknowledge in writing that (a) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Bidders or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

16. *Closing Date*. Each bid must state the date on which the Bidder expects to consummate the Sale.

17. *Other Information*. The Bid contains such other information as may be reasonably requested by the Debtors, in consultation with the Consultation Parties.

**B.  Rejection of "Qualified Bid" Status for Non-Conforming Bids**

The Debtors shall determine, in their reasonable discretion and in consultation with the Consultation Parties, whether a Bid qualifies as a Qualified Bid or whether such Bid shall be rejected as a non-conforming bid.  In addition, the Debtors shall have the right to negotiate with any Bidder with respect to clarification of any Bid.

**C.  No Representation; Qualified Bidder's Duty to Review**

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Intellectual Property, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Intellectual Property with governmental laws, the truth, accuracy, or completeness of any documents related to the Intellectual Property, or any other information provided by or on behalf of the Debtors to any Potential Bidder, Bidder or Qualified Bidder, or any other matter or thing regarding the Intellectual Property. All Qualified Bidders must acknowledge and agree that upon closing of the Sale, the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Intellectual Property, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Intellectual Property or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale.

## IV.    QUALIFICATION OF BIDDERS

No later than November 18, 2020, the Debtors shall notify each Bidder whether such party is a Qualified Bidder. The Debtors reserve the right to (but have no obligation to) cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

If any Bid is determined by the Debtors (after consultation with the Consultation Parties) not to be a Qualified Bid, the Debtors will refund such Bidder's Qualified Bidder Deposit on or before the date that is five (5) business days after the Bid Deadline or as soon as practicable thereafter.

The Debtors may, in consultation with the Consultation Parties accept as a single Qualified Bid, multiple Bids for non-overlapping material portions of the Intellectual Property such that, when taken together in the aggregate, such Bids would otherwise meet the standards for a single Qualified Bid. The Debtors may permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Intellectual Property but who were not identified as a component of a single Qualified Bid consisting of such multiple Bids, to participate in the Auction and to submit higher or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping material portions of the Intellectual Property, as part of such a single Qualified Bid for Overbid (as defined herein) purposes.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding

7

as specified in these Bid Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such Bidder is no longer a Qualified Bidder or that a Bid made by such Bidder is not a Qualified Bid.

## V.    RIGHT TO CREDIT BID

Any Qualified Bidder who has a valid and perfected lien on any Intellectual Property (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided that* a Secured Creditor shall have the right to credit bid its claim only for the collateral by which such Secured Creditor is secured; *provided further* the party submitting the credit bid must agree to add cash to its bid in an amount sufficient to pay the commission and expenses due to Hilco Streambank.

Notwithstanding anything to the contrary herein, the Prepetition Agent (on behalf of the Prepetition Lenders (as defined in the First Day Declaration)), shall be deemed to be a Qualified Bidder and, subject to section 363(k) of the Bankruptcy Code, may submit a credit bid of all or any portion of the aggregate amount of such Prepetition Lenders' secured claims pursuant to section 363(k) at any time during the Auction and any such credit bid will be considered a Qualified Bid, unless otherwise ordered by the Court for cause.

## VI.    SELECTION OF STALKING HORSE BID AND BID PROTECTIONS

Subject to Section XIX hereof, the Debtors are authorized, but not obligated, in an exercise of their reasonable business judgment and in consultation with the Consultation Parties, to select one or more Qualified Bidders to act as stalking horse bidder(s) in connection with the Auction (each a "Stalking Horse Bidder").  In connection with a stalking horse agreement with any Stalking Horse Bidder, the Debtors may, subject to the reasonable consent of the Consultation Parties and upon one (1) days' prior notice to the U.S. Trustee, agree to (x) provide the Stalking Horse Bidder with a reasonable breakup fee, and/or (y) reimburse the Stalking Horse Bidder for the reasonable and documented out of pocket fees and expenses, (x) and (y) collectively, the "Bid Protections"), which Bid Protections shall not be effective until authorized by the Court.  In the event the Debtors seek to provide Bid Protections to a Stalking Horse Bidder, the Debtors shall file a notice with the Court with the requested Bid Protections and seek a hearing on an expedited basis (including the same day as requested) so long as notice of such hearing is provided to the Prepetition Agent, U.S. Trustee and the Official Committee of Unsecured Creditors and filed on the docket of the Debtors' cases.

## VII.    THE AUCTION

If the Debtors receive more than one Qualified Bid for any particular Asset or portion of Intellectual Property, the Debtors shall conduct the Auction to determine the Successful Bidder with respect to such Intellectual Property or portion of Intellectual Property. One day prior to the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid(s), as determined in the Debtors' reasonable business judgment and in consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, but not limited to, among other things: (a) the specific terms of such Qualified Bidder's Bid Documents including the type and portion of the Intellectual Property sought and Assumed Obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transactions contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the ability and likelihood to close the transaction contemplated by the Qualified Bid (collectively, the "Bid Assessment Criteria").

### A. Auction Participation

1. <u>Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction</u>. The Auction shall take place on **November 19, 2020 at 10:00 a.m.** or such later time as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all Qualified Bidders, and other invitees. The Auction will be conducted by video conference, the details of which will be provided to Qualified Bidders in advance of the Auction. The Debtors shall have the right to conduct any number of Auctions on that date to accommodate multiple bids that comprise a single Qualified Bid, if the Debtors determine, in their business judgment and upon consultation with the Consultation Parties, that conducting such auctions would be in the best interests of the Debtors' estates.

2. <u>Participants and Attendees</u>.[2] Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bid Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. Any creditor wishing to attend the Auction may do so by contacting, no later than three (3) business days prior to the start of the Auction, the Debtors' advisors; *provided that* the Debtors may, in their sole and exclusive discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or

---

[2]    Unless the Bankruptcy Court orders or directs otherwise, only the Debtors' representatives, any other parties that the Debtors have invited specifically, the Consultation Parties and any Qualified Bidders and the professionals for each of the foregoing shall be entitled to attend the Auction; *provided* that only Qualified Bidders shall be entitled to bid at the Auction.

creditor at the Auction.. The Consultation Parties and their clients are permitted to attend the Auction without any further request or notice.

## B. Auction Procedures

Subject to Section XIX hereof, the Debtors (in consultation with their advisors and the Consultation Parties) shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis in the presence of all other Qualified Bidders, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; *provided that* any Overbid (including with respect to any Backup Bid (as defined below) must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher or otherwise better Qualified Bid as the Leading Bid. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction. The Debtors shall maintain a written transcript of the Auction and of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid (as defined below). The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment:

1. ***Baseline Bid as Price Floor***. The first round of bidding at the Action shall commence at the amount of the Baseline Bid.

2. ***Highest or Best Offer***. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the Bid that they believe in their reasonable business judgment and upon consultation with their advisors and the Consultation Parties to be the highest or otherwise best offer for the relevant Intellectual Property (the "Leading Bid"). Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.

3. ***Minimum Overbid***. Qualified Bidders may submit successive Bids, based on and increased from the Baseline Bid or the Leading Bid (as applicable) for the relevant Intellectual Property (each such Bid, an "Overbid"). Any Qualified Bidder's initial Overbid and each subsequent Overbid shall be (a) at least a $100,000 increase in cash consideration over the Leading Bid *plus* (b) if Stalking Horse Bidder has the then-Leading Bid, the amount of the Bid Protections (the "Minimum Overbid"). The Debtors may, in their reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors deem equivalent that exceeds the then Leading Bid by at least the Minimum Overbid Amount.

10

4. ***Announcement of Rules***. At commencement of the Auction, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s).

5. ***Overbid Alterations***. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bid Procedures.

6. ***Rejection of Bids***. The Debtors, in their reasonable business judgment may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

7. ***Additional Information***. The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction.

8. ***Modification of Procedures***. The Debtors may (in consultation with the Consultation Parties) announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bid Procedures.

9. ***No Collusion***. Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## C. Adjournment of the Auction

The Debtors reserve the right, in their reasonable business judgment and upon consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, including that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale Transaction(s) at the prevailing Bid amount.

### D.  Selection of Successful Bidder and Backup Bidder

Subject to Section XIX hereof, immediately prior to the conclusion of the Auction, the Debtors (including their independent director and in consultation with the Consultation Parties) shall (i) determine, consistent with these Bid Procedures and the Bid Assessment Criteria and upon consultation with their advisors and the Consultation Parties, which Bid constitutes (a) the highest or otherwise best bid(s) for the applicable Intellectual Property (each such Bid, a "Successful Bid" and the Qualified Bidder submitting such bid, the "Successful Bidder") and (b) which Bid constitutes the next highest or otherwise best Qualified Bid(s) after the Successful Bid (each such Bid, a "Backup Bid" and the Qualified Bidder submitting such bid, the "Backup Bidder") and (ii) notify all Qualified Bidders at the Auction for the applicable Intellectual Property of the identity of the Successful Bidder, the amount of the Purchase Price and other material terms of the Successful Bid, the identity of the Backup Bidder, and the amount of the Purchase Price and other material terms of the Backup Bid).

Subject to Section XIX hereof, the terms of the Successful Bid(s) and the Backup Bid(s) shall be reasonably acceptable to the Prepetition Agent; *provided that* the Debtors shall not be required to consult with or obtain consent from the Prepetition Agent in selecting the Successful Bid or Backup Bid for any Qualified Bid that provides for Payment in Full (as defined in the Cash Collateral Order) in cash of the outstanding ABL Obligations (as defined in the Cash Collateral Order) on the date of the Sale closing.

The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder on the date that is one business day following the date the Auction is closed.

### E.  Backup Bidder

If a Successful Bidder fails to consummate the transactions approved by the Court as contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The order approving the Sale will authorize, but not require, the Debtors to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

## VIII.    ACCEPTANCE OF SUCCESSFUL BID

Within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Debtors' presentation of a particular Successful Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing (as defined below). The Debtors shall seek approval by the Court to consummate the Backup Bid, solely in the event the Successful Bidder fails to close the transaction as required and with all rights reserved against the Successful Bidder.

## IX.    FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES

Except as provided for in a Successful Bidder's Bid Documents, all rights, titles and interests in and to the Intellectual Property subject thereto shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "Encumbrances"), subject only to the Assumed Contracts and Assumed Liabilities (as defined in the Successful Bidder's Bid Documents), if any, in accordance with Bankruptcy Code section 363(f), with such Encumbrances to attach to the proceeds (if any) received by the Debtors from the Sale of the Intellectual Property in accordance with the Bankruptcy Code, applicable non-bankruptcy law and any prior orders of the Court.

## X.    ASSUMPTION OF CONTRACTS

The Debtors will file with the Court and serve on each non-debtor party to an executory contract related to the Intellectual Property a notice setting forth the amount of cure owed thereunder according to the Debtors' books and records (the "Cure Notice").  The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume the contract pursuant to Bankruptcy Code § 365 (the "Cure Amount") and shall notify each non-debtor party that the party's contract may be assumed and assigned to the Successful Bidder.  Further, if a contract is designated as a Designated Contract by the Successful Bidder, then unless a counterparty properly and timely files and serves a Cure Objection pursuant to the Cure Notice, the counterparty will receive payment from the Successful Bidder of the Cure Amount (if any) as set forth in the Cure Notice consistent with the terms and procedures set forth in the Successful Bidder's asset purchase agreement.

Any objection to the Cure Amount must (i) be filed with the Court by the date set forth in such Cure Notice, (ii) be in writing; (iii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iv) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to; and (v) be filed with the Court no later than the applicable Cure Objection Deadline. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any executory contract or other document as of the date of the Cure Notice; the non-debtor party to the executory contract shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such contract or that there is any objection or defense to the assumption and assignment of such contract, including any argument that there exist conditions to assumption and assignment that must be satisfied under such contract or that any required consent to assignment has not been given.

To the extent an objection to any Cure Amount is timely filed, such objection may be heard in conjunction with the Sale Hearing or at such later date and time as the Debtors and the Successful Bidder may elect. The Debtors will provide the Committee and the Prepetition Agent with any informal objections to Cure Amounts.

The Successful Bidder reserves the right to amend the scheduled Designated Contracts through and including the closing date of the Sale or such other time as designated by the Successful Bidder in its asset purchase agreement and permitted by the Court. In the event a timely objection to a Cure Amount for any Designated Contract is still pending at the time of the closing of the sale to the Successful Bidder, such Successful Bidder shall have the option not to assume such Designated Contract until 30 days following the date on which the Cure Amount has been determined by the Bankruptcy Court or the counterparty to such Designated Contract and the Successful Bidder have agreed on the Cure Amount for such Designated Contract.

Service of a Cure Notice does not constitute any admission or agreement of the Debtors that the Designated Contract is an executory contract or unexpired lease or that the Designated Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

## XI.    SALE OBJECTIONS

Objections (if any) to approval of the Sale (other than an objection to the Cure Notice) shall be in writing, set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Court on or before November 25, 2020.

Any objection not filed and served in accordance with this section shall be deemed waived and shall be forever barred, and such party's failure to file and serve such objection shall be deemed the consent of the party to the granting of the Motion and the Sale.

## XII.    CASH COLLATERAL ORDER

Notwithstanding anything herein, all cash proceeds generated from the Sale of any Intellectual Property shall be paid in accordance with the Intellectual Property Proceeds Waterfall (as defined in the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; and (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 32] (as may be amended, modified or superseded by final order, the "Cash Collateral Order"), subject to any and all rights granted to the Committee under the Cash Collateral Order. Nothing in these Bid Procedures shall amend, modify, or impair any provision of the Cash Collateral Order, or the rights of the Debtors, Prepetition Agent, Prepetition Lenders or the Committee.

## XIII.    COMMISSIONS

The Debtors shall be under no obligation to pay a commission to any agent(s), advisor(s), or broker(s), except, with respect to Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and sell the Debtors' Intellectual Property assets. All commissions, fees, or expenses for agents other than Hilco Streambank, shall be the sole responsibility of such Bidders at such Bidder's discretion. In no case shall any commissions, fees, or expenses be deducted from any proceeds derived from the Sale of the Intellectual Property or the agreed Successful Bid other than to the extent set forth in the Order.

14

## XIV.   SALE HEARING

A hearing to consider the sale of the Debtors' Intellectual Property to the Successful Bidder(s), or Backup Bidder(s) (if applicable) (the "Sale Hearing") is currently scheduled to take place on December 1, 2020 at 10:00 A.M. (prevailing Eastern Time), before the Honorable Shelley C. Chapman, United States Bankruptcy Court for the Southern District of New York (Manhattan Division), One Bowling Green New York, NY 10004-1408.   **Any party who wishes to attend is required to make arrangements through Court Solutions at www.court-solutions.com or by telephone: (917) 746-7476.**

**The Sale Hearing may be continued to a later date by the Debtors (in consultation with the Consultation Parties) by sending notice prior to, or making an announcement at, the Sale Hearing.  Any continuance shall be filed on the docket but no further notice of such continuance will be required to be provided to any party.**

## XV.   RETURN OF DEPOSIT

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or before the date that is five business days after the Auction.

The Backup Bidder's Qualified Bidder Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to consummate the Sale Transaction(s) set forth in the Successful Bid and the Debtors opt to close on the Sale Transaction(s) set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the Purchase Price of such transaction(s) at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable.

## XVI.   CONSULTATION PARTIES

The "Consultation Parties" shall be the Prepetition Agent, counsel to the Committee and counsel to any other statutory committee appointed in the Chapter 11 Cases; *provided that* prior to receiving any information, making any decision hereunder or being consulted in any way in its capacity as Consultation Party, the Prepetition Agent shall have provided written confirmation to the Debtors that it does not intend to bid on any or all of the Intellectual Property and that it shall no longer be deemed a Qualified Bidder; *provided further that* any member of the Committee that submits a Bid shall not participate in any deliberations by the Committee as a Consultation Party nor have access to information shared with the Committee about the Sale process.

Notwithstanding anything to the contrary herein, the Debtors shall promptly notify the Consultation Parties of the Potential Bidders granted access to the Data Room by the Debtors and will provide updates and information about the participation of Potential Bidders in the sale process as reasonably requested from time to time by the Consultation Parties.

## XVII.    RESERVATION OF RIGHTS

The Debtors reserve their rights to modify these Bid Procedures in their reasonable business judgment and upon consultation with the Consultation Parties in any manner that will best promote the goals of the bidding process, serve the best interests of the estate, or impose, at or prior to the conclusion of the Auction, additional customary terms and conditions on the sale of the Intellectual Property, including, without limitation to (i)  seek approval of the Sale of portions of the Intellectual Property through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors to obtain the highest or best value for the Intellectual Property; (ii) revise the qualifications necessary for a Qualified Bidder and Qualified Bid, (iii) determine which bidders are Qualified Bidders and which bids are Qualified Bids; (iv) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (v) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (vi) remove some or all of the Intellectual Property from the Auction(s); (vii) waive terms and conditions set forth in these Bid Procedures with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction(s) and/or Sale Hearing in open court without further notice; and (xi) modify the Bid Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

## XVIII.    CONSENT TO JURISDICTION

All Potential Bidders, Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures, and/or the Bid Documents, as applicable.

## XIX.    FIDUCIARY OUT

Nothing in these Bid Procedures shall require the Debtors' (or any other debtors') management or board of directors to take any action or to refrain from taking any action with respect to these Bid Procedures when the Debtors' management or board of directors (or other debtors' management or board of directors) determine, based on the advice of their counsel, that taking such action or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law.