Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

Peter J. Young (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:  (310) 557-2900
Facsimile:  (310) 557-2193

Jeff J. Marwil (admitted *pro hac vice*)
Jordan E. Sazant (admitted *pro hac vice*)
Brooke H. Blackwell (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re<br><br>**CENTURY 21 DEPARTMENT STORES LLC,**<br>***et al.*,**<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 20-12097 (SCC)**<br><br>**(Jointly Administered)** |

### MOTION OF DEBTORS FOR AN ORDER AUTHORIZING AND APPROVING SALE OF INSURANCE ACTION INTEREST

Century 21 Department Stores LLC ("C21") and its affiliated debtors in possession (collectively, the "Debtors") hereby move (the "Motion"), under sections 105(a), 363 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9008 and 9014

---

[1]    The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order (the "Sale Order") authorizing the sale (the "Sale") of the Insurance Action Interest (as defined below) pursuant to the terms and conditions of the Participation Agreement (the "Participation Agreement"),[2] a copy of which is annexed hereto as **Exhibit A**, among (a) the Debtors, including C21 Department Stores LLC, on behalf of itself and all of the other Debtors, and the non-Debtor plaintiffs set forth therein (collectively, the "Policyholders" or "Plaintiffs"), on the one hand, and (b) the participant (the "Participant"), on the other hand, and in support thereof, by and through their undersigned counsel, respectfully state as follows:

### **Preliminary Statement**

1. As described in greater detail in the *Declaration of Norman R. Veit Jr. Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to on the Petition Date (the "Veit Declaration"), and in pleadings filed in the Insurance Action (as defined below), the Debtors were reasonably positioned to weather the effects of the global COVID-19 pandemic as a result of their careful insurance planning. The Policyholders are named insureds under various insurance policies (collectively, the "Insurance Policies") that in the aggregate provide for up to $350 million of insurance coverage, including for property damage, business interruption and other situations in which access to the vicinity of the Debtors' stores is restricted. In exchange for the protection afforded by the Insurance Policies, the Policyholders paid in excess of $1.4 million annually in premiums to their property and business interruption insurance carriers (collectively, the "Insurers" or "Defendants")[3]. However, with one exception, the Insurers decline

---

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Participation Agreement.
[3]    The Insurers are comprised of the following: Starr Surplus Lines Insurance Co., Allianz Global Risks US Insurance Co., Axis Surplus Lines Insurance Co., Liberty Mutual Fire Insurance Co., Steadfast Insurance Co., Endurance American Specialty Insurance Co., Evanston Insurance Co., Landmark American Insurance Co., QBE

to honor the terms of the Insurance Policies and indemnify the Plaintiffs for their COVID-19 losses.

2.   The Insurers' refusal to honor their obligations under the Insurance Policies forced the Policyholders to commence the Insurance Action (as defined below) and ultimately caused the Debtors to commence the Chapter 11 Cases.  Despite exploring strategic alternatives, the Debtors' lack of liquidity and mounting expenses forced the Debtors to liquidate their assets for the benefit of their creditors.

3.   As part of those liquidation efforts, the Debtors now seek to monetize their largest asset, the claims against the Insurers under the Insurance Policies.  While claims under the Insurance Policies themselves exceeded $175 million at the time the Insurance Action was commenced and continue to grow, litigation is inherently fraught with risk.  Further, the Defendants are well-funded and intend to defend vigorously the Insurance Action, which means prosecuting the Insurance Action likely will be costly and protracted.  Therefore, the Debtors believe that a sale of the Insurance Action Interest (as defined below) now, which is supported by the Prepetition Agent, will best maximize the value of their assets, pay off their secured debt in full, and provide an immediate and meaningful distribution to their general unsecured creditors.

4.   The Participant, who is not an affiliate of, insider of, a creditor of, or related in any way to the Debtors, negotiated on an arms' length basis with the Debtors, ultimately agreeing to enter into the Participation Agreement and consummate the Sale, with the Participant's express requirement that the Debtors seek approval of a "private sale."  After much legal and economic evaluation of the claims asserted in the Insurance Action, and in consultation with their advisors,

---

Specialty Insurance Co., Great American Fidelity Insurance Co., and certain Underwriters at Lloyds subscribing to Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712.

the official committee of unsecured creditors (the "Creditors' Committee") and the Prepetition

Agent, the Debtors (as directed by their Independent Director) agreed to the Sale on the terms set

forth in the Participation Agreement.

5.    The Debtors believe the Sale is in the best interests of their estates and the proceeds

thereof will allow the Debtors to satisfy their prepetition secured credit facility (the "ABL

Facility") in full and make meaningful distributions to general unsecured creditors without having

to wait for the conclusion of the Insurance Action, while also allowing general unsecured creditors

to receive additional distributions in the event that the proceeds of the Insurance Action exceed the

threshold set forth in the Participation Agreement.

### Debtors' Business and Bankruptcy Cases

6.    On September 10, 2020 (the "Petition Date"), the Debtors each commenced with this

Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").    The Debtors are authorized to continue to operate their business and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On September 16, 2020, the United States Trustee for Region 2 (the "U.S. Trustee")

appointed the Creditors' Committee.  No trustee or examiner has been appointed in these Chapter

11 Cases.

8.    The Debtors' Chapter 11 Cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

9.    Additional information regarding the Debtors' business, capital structure, and the

circumstances leading to the commencement of these Chapter 11 Cases is set forth in the Veit

4

Declaration and the *Debtors' Memorandum in Support of Chapter 11 Filings*, each filed with the Court at Dkt. Nos. 13 and 15, respectively, and incorporated by reference herein.

## Jurisdiction and Venue

10. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicates for the relief requested herein are sections 105(a), 363 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9008 and 9014, Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the *Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York Pursuant to General Order* M-383 (the "SDNY Sale Guidelines").

## The Insurance Action

12. The Policyholders are named insureds under the Insurance Policies, which provide up to $350 million "per occurrence" of insurance coverage, including for property damage, business interruption and if access to the vicinity of the Debtors' stores is restricted. Since 2007, the Policyholders have historically paid to the Insurers on average more than $1.4 million per year in annual premiums for such coverage. Despite the Policyholders' repeated requests, the Insurers refused to honor their obligations under the Insurance Policies to reimburse the Policyholders for their losses as a result of the COVID-19 pandemic and ensuing government-ordered store closures.

13. On July 8, 2020, Debtor C21 and the other Policyholders commenced against the Defendants a suit in the Supreme Court of the State of New York (the "State Court") (a) alleging breach of the relevant Insurance Policies as a result of the Defendants' failure to compensate the

Policyholders for their losses under the Insurance Policies, (b) seeking damages of over $175 million for the period March 2020 through May 31, 2020 and reserving their right to seek additional amounts for subsequent time periods, and (c) seeking consequential damages in an amount to be determined (the "Insurance Action").

14. On September 11, 2020, the Plaintiffs removed the Insurance Action from State Court to the United States District Court for the Southern District of New York (the "District Court"). Following referral of the Insurance Action from the District Court to this Court, docketed at Adversary Proceeding No. 20-1222 (SCC), on October 16, 2020, the Court entered a *Case Management and Scheduling Order* [Dkt. No. 54] (the "Scheduling Order") in the Insurance Action. The Scheduling Order provides deadlines for: the parties' exchange of written discovery requests, responses, and objections thereto, meet and confer, and production of documents and privilege logs; submission of a protective order; scheduling for litigation related to the Defendants' remand motion; filing of responsive pleadings and cross-claims, counter-claims and third party claims; and filing motions to compel.

### The Participation Agreement

15. Pursuant to Section 363 of the Bankruptcy Code, the Debtors are pursuing a sale of the Insurance Action Interest (as defined below), pursuant to the terms and conditions of the Participation Agreement, a copy of which is annexed hereto as **Exhibit A**.

16. The principal terms of the Participation Agreement are summarized as follows:

    (a) Participation Price. As set forth in the Participation Agreement

    (b) Good Faith Deposit. As set forth in the Participation Agreement

    (c) Insurance Action Interest:

        i. Subject to the terms and conditions of the Participation Agreement, the Policyholders will sell, and the Participant will acquire, a participation

6

interest in the Policyholders' interest in the Proceeds that now exist or may arise on account of the Insurance Action (the "<u>Insurance Action Interest</u>"). The "Proceeds" are "any cash, interest, penalties, legal fees, fees, damages, settlements, reimbursements, costs, expenses, sanctions, penalties, monetary award or other amounts or property paid or distributed by, or on behalf of the Insurers at any point in time in satisfaction, settlement or resolution of Policy Claims [] to which any one or more Debtors are entitled."

ii.   In addition, under the Participation Agreement, the Plaintiffs will share in any Proceeds received pursuant to a damages award by a court of competent jurisdiction after exhaustion of all appeals (or the time for such appeal having expired), or pursuant to a binding settlement agreement, in excess of a minimum threshold set forth in the Participation Agreement and in the amounts set forth in the Participation Agreement.

(d) <u>Free and Clear</u>. The Insurance Action Interest is to be transferred free and clear of all mortgages, liens, security interests, charges, easements, leases, subleases, covenants, rights of way, options, claims, restrictions or encumbrances of any kind pursuant to section 363(f) of the Bankruptcy Code. The Prepetition Agent has agreed that, upon Closing, it will release any liens, claims, and interests it has on the Insurance Action, the Insurance Action Interest, or the Proceeds, with such liens, claims and interests to attach to the Purchase Price received by the Debtors.

## <u>Applicable Authority</u>

### A. The Private Sale of the Insurance Action Interest is Within the Debtors' Sound Business Judgment.

17. "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18. A sale of a debtor's property outside the ordinary course of business should be approved by the Court if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d

Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 680 (Bankr. S.D.N.Y. 1989); *In re Magnesium Corp. of America*, Case No. 01-14312 (MKV) (Bankr. S.D.N.Y. Aug. 24, 2016), [Dkt. No. 745]. In *In re Magnesium Corp. of America*, the trustee sought to sell a debtor's litigation interest against its owners for their alleged part in looting the company and forcing it into bankruptcy. The court approved the sale of the litigation interest finding that the sale was in the "best interests of the Debtors, their creditors and respective estates" and that the trustee had "demonstrated good and sufficient business justification for the sale of the [insurance interest] pursuant to Section 363(b) of the Bankruptcy Code." *Id.* at ¶ 11.

19. More than adequate business justification exists to pursue the Sale proposed herein. The Sale will provide much-needed liquidity to the Debtors' estates, enabling them to pay off their ABL Facility in full, satisfy chapter 11 administrative expenses and priority claims in full, and provide a meaningful source of recovery for general unsecured creditors irrespective of the outcome of the Insurance Action. At present, the Debtors have insufficient funds to repay the ABL Facility, let alone fund the expected significant litigation costs to be incurred in the Insurance Action, particularly against well-funded adversaries, which are intent on delaying payout under the Insurance Policies and the litigation of the Insurance Action.

20. While the Debtors believe in their claims, all litigation is fraught with peril and unpredictability. Therefore, the Debtors (in consultation with the Creditors' Committee and Prepetition Agent) have made a business decision to monetize now a portion of the ultimate anticipated recovery in the Insurance Action, while at the same time preserving their ability – without risk to the Debtors – to receive additional consideration through the Proceeds Sharing if the Proceeds of the Insurance Action exceed a certain threshold.

**B. The Proposed Sale Is Appropriate Pursuant to Bankruptcy Rule 6004(f) and Local Rule 6004-1.**

21. Courts in this district permit private sales upon showing of a sound business purpose. *See, e.g.*,; *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. July 17, 2019), [Dkt. No. 869]; *In re Frontier Commc'ns Corp.*, Case No. 20-22476 (RDD) (Bankr. S.D.N.Y. Jan. 8, 2019), [Dkt. No. 811]; *In re Firestar Diamond, Inc.*, Case No. 18-10509 (SHL) (Bankr. S.D.N.Y. Dec. 6, 2018), [Dkt. No. 617].

22. Bankruptcy Rule 6004(f) expressly authorizes a debtor to sell estate property outside of the ordinary course of business by private sale. A court-approved auction process is not required to prove value under the Bankruptcy Code, Bankruptcy Rules, or Local Rules. *See, e.g.*, *In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 49–50 (Bankr. S.D.N.Y. 2016) ("[T]here is no rule that . . . asset sales are . . . conditioned on such a [public auction] requirement, which does not appear in the Bankruptcy Code or Bankruptcy Rules."). The SDNY Sale Guidelines state that the Court does not express a preference for public sales over private sales as a means to maximize the sale price. The SDNY Sale Guidelines simply require an explanation as to why the private sale is likely to maximize the sale price. SDNY Sale Guidelines at I.A. n. 2.

23. Additionally, the Prepetition Agent has provided its support for the relief sought by this Motion, and the Debtors consulted with the Creditors Committee before filing this Motion. All other creditors and parties in interest will receive adequate notice of the proposed Sale as provided herein. Such notice is (a) reasonably calculated to provide timely and adequate notice to the Debtors' creditor constituencies, those parties most interested in these Chapter 11 Cases, the Defendants and others whose interests are potentially implicated by the proposed Sale, (b) sufficient for entry of the Sale Order and (c) satisfies requisite notice conditions for approval of the Sale under section 363(b) of the Bankruptcy Code and Bankruptcy Rule 2002(c). With respect

9

the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that:

> Subject to Rule 6004, the notice of a proposed use, *sale*, or lease of property required by subdivision (a)(2) of this rule shall include … the terms and conditions of any ***private sale*** and the time fixed for filing objections. The notice of a proposed …sale… is sufficient if it generally describes the property. The notice of a proposed sale or lease of personally identifiable information under § 363(b)(1) of the Code shall state whether the sale is consistent with any policy prohibiting the transfer of the information.

Fed. R. Bankr. P. 2002(c)(1).

24. The Debtors believe that the private Sale to the Participant maximizes the value that the Debtors' estates can realize from the Insurance Action Interest. Courts have held that a debtor has broad discretion to determine the manner in which its assets are sold. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale). A private sale to the Participant is in the best interests of the Debtors given the Participation Price offered by the Participant. Here, where there is active litigation against well-funded adversaries intent on avoiding paying their obligations under the Insurance Policies, disclosure of the Participation Price would imperil the Debtors' ability to monetize this valuable asset and would put them and the Participant at a significant disadvantage in the ongoing litigation. The costs of running an auction or pursuing a robust marketing process for the Insurance Action Interest likely would exceed any incremental price increase the Debtors would realize from such process, if at all, particularly where the Debtors' intent to sell these assets has been in the public record since the first days of these Chapter 11 Cases. Furthermore, a public auction or marketing process at this time would cause delay, might not yield a higher price, and would risk losing the Participant's offer, which the Participant made contingent on a private sale.

10

Therefore, the Debtors submit that a private sale to the Participant of the Insurance Action Interest is appropriate under the circumstances.

**C.  Participant is Entitled to the Protections of Bankruptcy Code Section 363(m).**

25. The Participation Agreement between the Debtors and the Participant was negotiated at arms' length and in good faith and, thus, the Participant is entitled to the protections of section 363(m) of the Bankruptcy Code.  The Second Circuit has indicated that a party would have to show fraud or collusion between the Participant and the Debtors to demonstrate a lack of good faith. *See Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [purchaser]'s good faith status at a judicial sale involves fraud, "collusion between the [purchaser] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.") (quoting *In re Rock Indus., Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))); *see also In re Angelika Films 57th, Inc.*, Nos. 97 Civ. 2239 (MBM), 97 Civ. 2241 (MBM), 1997 WL 283412, at *7 (S.D.N.Y. May 29, 1997); *In re Bakalis*, at 537.

26. Accordingly, the Debtors request that the Court find that the Participation Agreement is entitled to the protections of section 363(m) of the Bankruptcy Code.

**D.  The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Claims.**

27. The Debtors may sell the Insurance Action Interest free and clear of any interest in such property of an entity other than the estates only if, among other things:

(a)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)  such entity consents;

11

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *In re Dewey & Leboeuf LLP*, No. 12-12321 MG, 2012 WL 5386276, at *5 (Bankr. S.D.N.Y. Nov. 1, 2012) (citing *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Bankruptcy Code section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met)).

28. To the Debtors' knowledge, there is no entity that can assert a claim to or against the Insurance Action Interest other than the Prepetition Agent, which has consented to the Sale, and the Prepetition Agent agreed that it will release its liens upon Closing so long as the Proceeds of the Sale are first used to repay the ABL Facility. Even if some claim other than the claim of the Prepetition Agent were to exist, any such entity could be compelled to accept a money satisfaction of such interest, satisfying section 363(f) of the Bankruptcy Code.

## Notice

29. Contemporaneously with the filing of this Motion, the Debtors will be filing a motion to seal (the "Sealing Motion") to redact certain information in this Motion and the Participation Agreement in accordance with Local Rule 9018-1. Accordingly, the Debtors will serve redacted copies of this Motion, the Participation Agreement, the proposed Sale Order and all exhibits: (a) by email upon all entities known to have expressed an interest in a transaction with respect to the Insurance Action at any time since the Petition Date; and (b) by first class mail, postage prepaid,

upon (i) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Insurance Action Interest; (ii) the United States Trustee for Region 2; (iii) counsel to the Creditors' Committee, Jeffrey Cohen (JCohen@lowenstein.com) and Brent Weisenberg (BWeisenberg@lowenstein.com); (iv) the United States Attorney's Office for the Southern District of New York; (v) counsel to the Prepetition Agent, Julia Frost-Davies (julia.frostdavies@morganlewis.com) and David Riley (david.riley@morganlewis.com); (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (vii) counsel to the Defendants.

30. The Debtors submit that such notice, together with the other notice described herein, is good, adequate, sufficient and proper notice to interested parties.  Accordingly, the Debtors request that the Court find that notice in this manner is sufficient and that no further is required.

31. Any objections to the Motion shall be filed on the docket and served on the Debtors, the Committee, the Prepetition Agent, and the United States Trustee no later than December 11, 2020 at 4:00 p.m. (Prevailing Eastern Time).

## No Prior Request

32. No prior request for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

13

## Conclusion

WHEREFORE, the Debtors respectfully request this Court enter the Sale Order, and grant

such other and further relief as may be just and proper.

Dated: November 23, 2020           Respectfully submitted,
      New York, New York           /s/  *Lucy F. Kweskin*

_____

Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email: lkweskin@proskauer.com
Email: mskrzynski@proskauer.com

-and-

Jeff J. Marwil (admitted *pro hac vice*)
Jordan E. Sazant (admitted *pro hac vice*)
Brooke H. Blackwell (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:  (312) 962-3550
Facsimile:  (312) 962-3551
Email: jmarwil@proskauer.com
Email: jsazant@proskauer.com
Email: bblackwell@proskauer.com

-and-

Peter J. Young (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 577-2193
Email: pyoung@proskauer.com
*Attorneys for Debtors*
*and Debtors in Possession*

14

## Exhibit A

**Participation Agreement**

[Filed Under Seal]

**Privileged and Confidential**
**Attorney Work Product**

## **Exhibit B**

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

**CENTURY 21 DEPARTMENT STORES LLC,**
*et al.*,

　　　　　　　**Debtors.**[4]

---

**Chapter 11**

**Case No. 20-12097 (SCC)**

**(Jointly Administered)**

---

**ORDER (A) AUTHORIZING AND APPROVING**
**SALE OF INSURANCE ACTION INTEREST FREE AND CLEAR OF LIENS, CLAIMS**
**AND ENCUMBRANCES; AND (B) GRANTING RELATED RELIEF**

Upon the motion [Docket No. [●]] (the "**Motion**") of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for the entry of an order (this "**Order**") pursuant to sections 105(a), 363 and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the *Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York Pursuant to General Order* M-383 (the "**SDNY Sale Guidelines**"):

(i)　　approving the private sale (the "**Sale**") of a participation interest in the Proceeds that now exist or may arise on account of the Insurance Action (the "**Insurance Action Interest**") to the Participant, pursuant to that certain Participation Agreement dated as of [_____], 2020 by and between C21 Department Stores LLC, on behalf of itself and all of the other Debtors (in such capacity, the "**Issuer**"), certain non-Debtor Policyholders, and the Participant (attached hereto as Exhibit 1, and as amended from time to time, including all schedules, exhibits, and ancillary documents, the "**Participation Agreement**"),[5] free and clear of all liens, claims, and encumbrances, to the fullest extent permitted by law; and

---

[4]　　The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.
[5]　　Capitalized terms used but not defined herein have the meanings given to them in the Motion or the Participation Agreement, as applicable.

(ii)    granting certain related relief;

and the Court having held a hearing to approve the Sale on [_____], 2020, at which time all interested parties were offered an opportunity to be heard with respect to the Motion (the "**Sale Hearing**"); and the Court having reviewed and considered the Motion, the Declaration of [_____] filed in support of the Motion, any objections to the Motion, and any replies in further support of the Motion; and upon the record of the Sale Hearing; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue of these cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT**:

A.    **Legal Predicates.**  The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 503 of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002, 6004, 9008 and 9014 and the SDNY Sale Guidelines.  The consummation of the transactions contemplated by the Motion, this Order, and the Participation Agreement is legal, valid, and properly authorized under all such provisions of the Bankruptcy Code, the Bankruptcy Rules and the SDNY Sale Guidelines.

B.    **Notice.**  As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale, the Participation Agreement, the Sale Hearing, all transactions contemplated therein or in connection therewith, and all deadlines

related thereto, has been provided to all interested persons and entities and in accordance with the

Bankruptcy Code, the Bankruptcy Rules and the SDNY Sale Guidelines.  The aforementioned

notices are good, sufficient, and appropriate under the circumstances, and no other or further notice

of any of the foregoing is required for entry of this Order.  All interested persons and entities have

been provided a reasonable opportunity to object or be heard regarding the relief requested in the

Motion, and [no objections have been filed or heard] [all objections have been rejected or overruled

for the reasons stated on the record].

C.    **Adequate Marketing.**  As demonstrated by the Veit Declaration and testimony

and other evidence proffered or adduced at the Sale Hearing and the representations of counsel

made on the record at the Sale Hearing, the Debtors have adequately marketed the Insurance

Action Interest and the Proceeds.

D.    **Business Justification.**  The Debtors have demonstrated compelling circumstances

and a good, sufficient, and sound business purpose and justification for entering into the

Participation Agreement, which provides for the private sale of the Insurance Action Interest to

the Participant.  The Debtors have, among other things, determined in their business judgment that,

under current circumstances, the benefits of consummating a prompt private sale of the Insurance

Action Interest on the terms and conditions embodied in the Participation Agreement outweigh

any potential benefits of conducting a further marketing and overbid process for the Insurance

Action Interest.   In light of the circumstances of these cases, time is of the essence in

(i) consummating the Sale and all related transactions, and (ii) maximizing the value of the

Insurance Action Interest and the Proceeds.

E.    **Sale in Best Interests.**  Approval of the Participation Agreement, the Sale, and all

related transactions at this time, and the actions to be taken by the Debtors and the Participant, are

- 4 -

appropriate under the circumstances of these cases and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entry into the Sale and the performance of their obligations under the Participation Agreement.

F.    **Good Faith Purchaser.**    The Sale and the transactions contemplated by the Participation Agreement are undertaken by the Participant without collusion, at arm's length and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal. The Participant will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Participation Agreement and is a good faith purchaser for value within the meaning of section 363(m) of the Bankruptcy Code. As such, the Participant is entitled to all of the protections and immunities afforded under section 363(m) of the Bankruptcy Code. There has been no showing that the Debtors or the Participant engaged in any action or inaction that would cause or permit the transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

G.    **Corporate Authority.**    The Issuer, on behalf of itself and all of the other Debtors: (i) has full corporate power and authority to execute the Participation Agreement and all other documents contemplated thereby; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Participation Agreement; (iii) has taken all corporate action necessary to authorize and approve the Participation Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (iv) needs no

- 5 -

consents or approvals, other than those expressly provided for in the Participation Agreement, which may be waived in accordance with the terms therewith. The Sale of the Insurance Action Interest has been duly and validly authorized by all necessary corporate action of the Debtors.

H.     **Free and Clear Findings Required by the Participant.**  The Debtors would not have entered into the Participation Agreement and would not consummate the Sale if the sale of the Insurance Action Interest to the Participant was not, pursuant to section 363(f) of the Bankruptcy Code, free and clear, to the extent permitted by law, of (i) all liens (statutory or otherwise), mortgages, pledges, security interests, charges, and other encumbrances (collectively, the "**Liens**"), and (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), obligations, rights of setoff, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing Date (collectively, the "**Claims**").  To the fullest extent permitted by law, the Sale shall be free and clear of, and the Participant shall not be responsible for, any Liens or Claims.

I.     **No Fraudulent Transfer.**  The Participation Agreement was not entered into with the intent of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia or the laws of any foreign jurisdiction.  The consideration provided by the Participant for the Insurance Action Interest pursuant to the Participation Agreement (i) is fair and reasonable; (ii) is the highest and best offer for the Insurance Action Interest; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration for the Insurance Action Interest.

- 6 -

**J.        Binding and Valid Transfer.**  The Sale of the Insurance Action Interest  to the
Participant will be a legal, valid, and effective transfer of the Insurance Action Interest, and will
vest the Participant with all right, title, and interest of the Debtors to the Insurance Action Interest
and, subject to the Debtors' right under the Participation Agreement to the Proceeds Sharing, the
beneficial interest in the Proceeds free and clear, to the fullest extent permitted by law, of all Liens
and Claims, as set forth in the Participation Agreement.  Immediately prior to consummating the
Sale, the Insurance Action Interest, the Proceeds and the other Policy Claim Rights constitute
property of the Debtors' estates, good title is vested in the Debtors' estates within the meaning of
section 541(a) of the Bankruptcy Code, and the Debtors are the sole and rightful owner of the
Insurance Action Interest, the Proceeds and the other Policy Claim Rights.  Upon and following
the consummation of the Sale, the Participant shall be vested with good and marketable title to the
Insurance Action Interest and shall be the sole and rightful owners of the Insurance Action Interest
and, subject to the Proceeds Sharing, any and all Proceeds held or received by the Debtors shall
constitute property of the Participant to which the Participant has an absolute right, and the Debtors
shall not have any equitable or beneficial interest in such Proceeds (other than any amounts in
respect of the Proceeds Sharing, if any) after the Closing, and such Proceeds (other than any
amounts in respect of the Proceeds Sharing, if any) shall not be deemed to be property of the
Debtors' estates pursuant to section 541(d) of the Bankruptcy Code.

**K.        Satisfaction of 363(f) Standards.**  The Debtors may sell the Insurance Action
Interest, to the fullest extent permitted by law, free and clear of all Liens and Claims because, in
each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code
has been satisfied.  Holders of Liens or Claims, who did not object, or who withdrew their
objections, or whose objections were overruled, to the Motion are deemed to have consented

pursuant to section 363(f)(2) of the Bankruptcy Code.  In all cases, each such person with a Lien or Claim against the Insurance Action Interest, the Proceeds or other Policy Claim Rights is enjoined from taking any action against the Participant, the Participant's affiliates, or any agent of the foregoing to recover any such Lien or Claim.

L.    **Necessity of Order.**  The Participant would not have entered into the Participation Agreement and would not consummate the transactions without all of the relief provided for in this Order.  The consummation of the transactions pursuant to this Order and the Participation Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of the Debtors, their estates and creditors, and all other parties in interest.

M.    **Final Order.**  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

N.    **Legal and Factual Bases.**  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein and entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Motion is Granted.**  The Motion is granted as set forth herein.

**Objections Overruled.**  Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion (as may be modified herein), that have not been

withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

**Approval.** The Participation Agreement, and all the terms and conditions thereof, is approved. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Issuer and the other Debtors are authorized to perform their obligations under, and comply with the terms of, the Participation Agreement and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the Participation Agreement and this Order. The Issuer, on behalf of itself and all of the other Debtors, is authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Participation Agreement, together with all additional instruments and documents that are necessary or appropriate to implement the Participation Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Participant for the purpose of transferring, granting, conveying, and conferring to the Participant or reducing to Participant's possession the Insurance Action Interest or as may be necessary or appropriate to the performance of the obligations as contemplated by the Participation Agreement.

**Binding Effect of Order.** This Order and the Participation Agreement shall be binding in all respects upon all creditors of, and holders of equity security interests in, any Debtor (including any holders of Liens or Claims), all counterparties to the Policies, all successors and assigns of the Participant, each Debtor and its affiliates and subsidiaries, and any trustees appointed in the Debtors' cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code. This Order and the Participation Agreement shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Participation Agreement or this Order.

**General Assignment.**  On and after the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Insurance Action Interest and a bill of sale transferring good and marketable title in the Insurance Action Interest to the Participant free and clear (to the extent permitted by law) of all Liens and Claims.  On and after the Closing Date, the Debtors shall hold all Proceeds (other than any amounts in respect of the Proceeds Sharing, if any) in trust for the benefit of the Participant and any Proceeds (other than any amounts in respect of the Proceeds Sharing, if any) held or received by the Debtors shall constitute property of Participant to which Participant has an absolute right, and the Debtors shall not have any equitable or beneficial interest in such Proceeds after the Closing, and such Proceeds shall not be deemed to be property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code.

**Transfer Free and Clear.**  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, on the Closing Date the Insurance Action Interest shall be transferred to the Participant as required under the Participation Agreement, and such transfer shall be, to the fullest extent permitted by law, free and clear of all Liens or Claims of any Person.

**Valid Transfer.**  The transfer of the Insurance Action Interest to the Participant pursuant to the Participation Agreement constitutes a legal, valid, and effective transfer of the Insurance Action Interest in the Proceeds and shall vest the Participant with all right, title, and interest of the Debtors in and to the Insurance Action Interest and, subject to the Proceeds Sharing, the beneficial interest in the Proceeds free and clear to the fullest extent permitted by law of all Liens or Claims.

**Direction to Release Interests.**  Upon the Closing Date, each of the Debtors' creditors and any other holder of a Lien or Claim shall be deemed to have released its Lien or Claim in the Insurance Action Interest and/or the Proceeds, if any, as such Lien or Claim may have been

- 10 -

recorded or may otherwise exist.  If any person or entity that has filed financing statements,

mortgages, mechanics' liens, *lis pendens*, or other documents or agreements evidencing a Lien or

Claim in the Insurance Action Interest and/or the Proceeds shall not have delivered to the

Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, releases of liens and easements, and

any other documents necessary for the purpose of documenting the release of all Liens or Claims

that the person or entity has or may assert with respect to any of the Insurance Action Interest

and/or the Proceeds, (i) the Debtors and/or the Participant are authorized to execute and file such

statements, instruments, releases, and other documents on behalf of the person or entity with

respect to the Debtors or the Insurance Action Interest or the Proceeds, and (ii) the Participant is

authorized to file, register, or otherwise record a certified copy of this Order, which shall

constitute conclusive evidence of the release of all Liens or Claims in the Insurance Action

Interest and/or the Proceeds.

**Fair Consideration.**  The consideration provided by the Participant for the Insurance

Action Interest under the Participation Agreement shall be deemed to constitute reasonably

equivalent value and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession, or the District of Columbia.  The Sale may not be

avoided under section 363(n) of the Bankruptcy Code.  The Participation Agreement was not

entered into, and the Sale is not being consummated, with the intent of hindering, delaying, or

defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession thereof, or the District of Columbia, or any other applicable

law.  Neither the Debtors, nor the Participant has entered into the Participation Agreement or any

agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise

- 11 -

improper purpose.  No other person or entity or group of persons or entities has offered to purchase

the Insurance Action Interest for an amount that would provide greater value to the Debtors and

their estates than the Participant.  The Court's approval of the Motion and the Participation

Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties

in interest.

  **Good Faith Purchaser.**  The transactions contemplated by the Participation Agreement

are undertaken by the Participant in good faith, as that term is used in section 363(m) of the

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein by this Order to consummate the Sale shall not affect the validity of the sale of the

Insurance Action Interest to the Participant.  The Participant is a purchaser in good faith of the

Insurance Action Interest, and is entitled to all of the protections afforded by section 363(m) of the

Bankruptcy Code.  As a good faith purchaser of the Insurance Action Interest, the Participant has

not entered into an agreement with any potential bidders, and has not colluded with any potential

bidders or any other parties interested in the Insurance Action Interest and the Proceeds, and,

therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled

to bring an action against the Participant on any such grounds, and the Sale may not be avoided

pursuant to section 363(n) of the Bankruptcy Code.

  **Failure to Specify Provisions.**  The failure to specifically include any particular provisions

of the Participation Agreement in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Participation Agreement be authorized and

approved in its entirety.

  **Amendment.**  The Participation Agreement and any related agreements, documents, or

other instruments may be modified, amended, or supplemented by the parties thereto and in

accordance with the terms thereof, without further order of the Court, *provided that* any such modifications, amendments, or supplements are not inconsistent with this Order.

**No Stay or Order.**    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Participant are authorized to close the transactions immediately upon entry of this Order.    Time is of the essence in closing the transactions referenced herein, and the Debtors and the Participant intend to close the transactions as soon as practicable.    Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

**Appointment of Trustee.**    The provisions of the Participation Agreement and this Order may be specifically enforced in accordance with the Participation Agreement notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing Date or dismissal of the Chapter 11 Cases.

**Time Calculations.**    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Provisions Nonseverable.**    The provisions of this Order are nonseverable and mutually dependent.

**Retention of Jurisdiction.**    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Participation Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, and to adjudicate, if necessary, all disputes concerning or relating in any way to the Sale.

**Inconsistencies with Prior Orders, Pleadings or Agreements.** To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale. To the extent there is any inconsistency between the terms of this Order and the terms of the Participation Agreement, the terms of this Order shall govern and control.

Dated: _____, 2020
      New York, New York

                                      THE HONORABLE SHELLEY C. CHAPMAN
                                      UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Participation Agreement**