Lucy F. Kweskin
Matthew A. Skrzynski
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Peter J. Young (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Jeff J. Marwil (admitted *pro hac vice*)
Jordan E. Sazant (admitted *pro hac vice*)
Brooke H. Blackwell (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**CENTURY 21 DEPARTMENT STORES LLC**, *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 20-12097 (SCC)**<br><br>**(Jointly Administered)** |

**OBJECTION TO ACRO DISPLAY LLC'S**
**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE**
**PURSUANT TO SECTION 503(b) OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens Of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033). The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ..............................................................................................................................1

JURISDICTION AND VENUE ........................................................................................................3

OBJECTION......................................................................................................................................3

    I.    Acro Display Is Not Entitled to an Administrative Expense Claim Under Section 546(c) of the Bankruptcy Code...............................................................3

        A.    Section 546(c) Does Not Entitle a Supplier of Reclamation Goods to an Administrative Expense Claim. ......................................................................3

        B.    Even if Section 546(c) Entitled Acro Display to an Administrative Expense Claim, Such Claim Would Be Junior to the Blanket Lien of the Prepetition Agent and Valueless..........................................................4

        C.    Acro Display's Vague Allegations of Fraud Are Meritless.........................6

    II.    Acro Display Is Not Entitled to an Administrative Expense Claim for the Reclamation Invoices Under Section 503(b)(1) of the Bankruptcy Code Because It Has Not Established a Post-Petition Transaction or Benefit to the Estate. ....................................................................................................7

        A.    All Transactions Between Acro Display and the Debtors Occurred Prepetition. ...................................................................................................8

        B.    The Debtors Have Not Derived a Quantifiable Benefit from Their Use of the Shelves.....................................................................................10

    III.    Even if Acro Display Were Entitled to an Administrative Expense Claim for the Reclamation Invoices, It Is Not Entitled to Immediate Payment of Any Such Claim. .......................................................................................11

RESERVATION OF RIGHTS ........................................................................................................12

CONCLUSION................................................................................................................................13

# TABLE OF AUTHORITIES

                                                                                                      Page(s)

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................7

*Food Employers Labor Relations Ass'n v. Great Atl. & Pac. Tea Co.*,
   620 F. App'x 31 (2d Cir. 2015) ...............................................................................................7

*In re Advanced Mktg. Servs., Inc.*,
   360 B.R. 421 (Bankr. D. Del. 2007) ........................................................................................5

*In re Bethlehem Steel Corp.*,
   479 F.3d 167 (2d Cir. 2007)..................................................................................................7, 8

*In re Circuit City Stores, Inc.*,
   441 B.R. 496 (Bankr. E.D. Va. 2010) ..................................................................................3, 5

*In re CIS Corp.*,
   142 B.R. 640 (S.D.N.Y. 1992)..............................................................................................7, 8

*In re Dana Corp.*,
   367 B.R. 409 (Bankr. S.D.N.Y. 2007) .................................................................................5, 6

*In re Enron Corp.*,
   279 B.R. 695 (Bankr. S.D.N.Y. 2002) .....................................................................................9

*In re First Magnus Fin. Corp.*,
   No. 4:07BK01578-JMM, 2008 WL 5046596 (Bankr. D. Ariz. Oct. 16, 2008).........................4

*In re Garden Ridge Corp.*,
   323 B.R. 136 (Bankr. D. Del. 2005) ......................................................................................11

*In re Grubb & Ellis Co.*,
   478 B.R. 622 (Bankr. S.D.N.Y. 2012) ...........................................................................8, 9, 10

*In re Hhgregg, Inc.*,
   949 F.3d 1039 (7th Cir. 2020) ..................................................................................................5

*In re John's Meat Emporium, Inc.*,
   176 B.R. 700 (Bankr. E.D.N.Y. 1995).....................................................................................9

*In re King*,
   392 B.R. 62 (Bankr. S.D.N.Y. 2008) ...............................................................................10, 11

*In re Kuvykin*,
   No. 18-10760 (JLG), 2018 WL 4191854 (Bankr. S.D.N.Y. Aug. 31, 2018) ..........................9

*In re Modern Metal Prod. Co.*,
   No. BKR 08 B 73908, 2009 WL 1362632 (Bankr. N.D. Ill. May 13, 2009) ........................11

*In re Old Carco LLC*,
   424 B.R. 650 (Bankr. S.D.N.Y. 2010), aff'd, No. 09-50002 AJG, 2010 WL
   4455648 (S.D.N.Y. Nov. 2, 2010) ..................................................................................10

*In re REFCO, Inc.*,
   No. 07 CIV. 4784 (DLC), 2008 WL 140956 (S.D.N.Y. Jan. 14, 2008) ..............................9, 10

*In re Specialty Retail Shops Holding Corp.*,
   606 B.R. 361 (Bankr. D. Neb. 2019) ..............................................................................4, 5

*In re Specialty Shops Holding Corp.*,
   No. 8:19CV405, 2020 WL 4260516 (D. Neb. July 24, 2020) ..........................................3, 4, 5

*In re Westinghouse Elec. Co. LLC*,
   No. 17-10751 (MEW), 2019 WL 4555990 (Bankr. S.D.N.Y. Sept. 19, 2019) ....................8, 9

**STATUTES**

11 U.S.C. § 503(b)(1)(A) ................................................................................................1

11 U.S.C. § 503(b)(9) ......................................................................................................1

11 U.S.C. § 546(c) ........................................................................................................1, 5

11 U.S.C. § 1107(a) ........................................................................................................2

11 U.S.C. § 1108 .............................................................................................................2

28 U.S.C. § 157 ...............................................................................................................3

28 U.S.C. § 157(b) ..........................................................................................................3

28 U.S.C. § 1334 .............................................................................................................3

28 U.S.C. § 1408 .............................................................................................................3

28 U.S.C. § 1409 .............................................................................................................3

U.C.C. § 2-702 ................................................................................................................6

U.C.C. § 2-702(2) ............................................................................................................6

iii

**RULES**

Fed. R. Bankr. P. 1015(b) ...................................................................................................2

Fed. R. Bankr. P. 7008 .......................................................................................................3

**OTHER AUTHORITIES**

Amended Standing Order of Reference M-431 .................................................................3

United States Constitution Article III .................................................................................3

Century 21 Department Stores LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this Objection (this "**Objection**") to *Acro Display LLC's Motion for Allowance and Payment of Administrative Expense Pursuant to Section 503(b) of the Bankruptcy Code* [Dkt. No 226] (the "**Motion**") filed by Acro Display LLC ("**Acro Display**") and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Acro Display designs, builds, and installs shelving units. In the forty-five (45) days preceding September 10, 2020 (the "**Petition Date**"), Acro Display delivered and installed shelves to display shoes (the "**Shelves**") at five of the Debtors' stores. On November 6, 2020, Acro Display filed the Motion seeking an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code for the invoices related to the Shelves (the "**Reclamation Invoices**").

2.      While Acro Display may have a claim under section 503(b)(9) of the Bankruptcy Code for a portion of the Reclamation Invoices, Acro Display is neither entitled to an administrative expense claim for the value of the goods it provided to the Debtors in the entirety of the forty-five (45) days preceding the Petition Date under § 546(c) nor has it demonstrated both a post-petition transaction and quantifiable benefit necessary to qualify for an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code.

3.      For the foregoing reasons, and as more fully set forth below, the Debtors respectfully request that the Court deny the Motion in its entirety.

## BACKGROUND

4.      On the Petition Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are

authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 16, 2020, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these Chapter 11 Cases.

6. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Norman R. Veit Jr. Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to on the Petition Date (the "**Veit Declaration**"),[2] and the *Debtors' Memorandum in Support of Chapter 11 Filings*, each filed with the Court at ECF Nos. 13 and 15, respectively, and incorporated by reference herein.

8. On or about September 18, 2020, Acro Display made a written reclamation demand upon the Debtors for the Shelves. However, the Debtors were unable to return the Shelves because they had already been installed in the Debtors' stores and liquidation sales were underway. On November 6, 2020, Acro Display filed the Motion seeking an administrative expense claim for the Reclamation Invoices. Only one of the five Reclamation Invoices is for goods received by the Debtors within the twenty (20) days preceding the Petition Date; the remaining four Reclamation

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Veit Declaration.

Invoices are for goods received by the Debtors in the twenty-one (21) to forty-five (45) days preceding the Petition Date.

## JURISDICTION AND VENUE

9. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The Debtors confirm their consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## OBJECTION

**I. Acro Display Is Not Entitled to an Administrative Expense Claim Under Section 546(c) of the Bankruptcy Code.**

**A. Section 546(c) Does Not Entitle a Supplier of Reclamation Goods to an Administrative Expense Claim.**

11. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended section 546(c) of the Bankruptcy Code and "radically alter[ed] how reclamation claims are treated in bankruptcy and do[es] not maintain the alternative remedy of an administrative claim for reclaiming sellers." *In re Specialty Shops Holding Corp.*, No. 8:19CV405, 2020 WL 4260516, at *4 (D. Neb. July 24, 2020) (quoting *In re Specialty Retail Shops Holding Corp.*, 606 B.R. 361, 368 (Bankr. D. Neb. 2019)); *In re Circuit City Stores, Inc.*, 441 B.R. 496, 504 (Bankr. E.D. Va. 2010) ("§546(c) does not grant Respondents either administrative expense priority or secured lien status on account of their Reclamation Claims.").

3

12. Section 546(c) entitles a reclamation claimant to an administrative expense claim, if at all, under section 503(b)(9). *In re Specialty Shops Holding Corp.*, 2020 WL 4260516, at *5 ("§ 546(c) does not otherwise entitle [a reclamation claimant] to an administrative claim other than the one it already received under § 503(b)(9)"); *In re First Magnus Fin. Corp.*, No. 4:07BK01578-JMM, 2008 WL 5046596, at *2 (Bankr. D. Ariz. Oct. 16, 2008) (§ 546(c) "does not give a [reclamation] seller/creditor an administrative claim, except to the extent it qualifies for one under § 503(b)(9).").

13. Since BAPCPA's enactment, "caselaw is fairly consistent in holding that reclaiming sellers are entitled to an administrative claim under 11 U.S.C. § 503(b)(9) (added by BAPCPA), but not under § 546(c), when a prior secured claim in excess of the value of the goods exists." *In re Specialty Retail Shops Holding Corp.*, 606 B.R. at 368. Under section 546(c), Acro Display is limited to an administrative expense claim, if at all, only as provided for by section 503(b)(9).

    **B.** **Even if Section 546(c) Entitled Acro Display to an Administrative Expense Claim, Such Claim Would Be Junior to the Blanket Lien of the Prepetition Agent and Valueless.**

14. Acro Display's goods are subject to the valid prior liens of JPMorgan Chase, the agent under the Debtor's prepetition secured facility (the "**Prepetition Agent**"). The Prepetition Agent holds a first-priority security interest in substantially all of the Debtors' assets, including all goods in which the Debtor has or acquires title (i.e. a floating blanket lien). *Pledge and Security Agreement*, Article II, 6–7 (executed January 4, 2017). Accordingly, Acro Display's reclamation claim under section 546(c) is subject to the Prepetition Agent's prior rights in the Shelves. Acro Display misguidedly states that "the Lender has no intention of asserting its lien." Motion at ¶ 34. Given its floating blanket lien upon all of the Debtors' assets, the Prepetition Agent does not have

4

to "assert" its lien because it automatically attached upon the Debtors' acquisition of title to the Shelves.

15. The current version of section 546(c)(1) of the Bankruptcy Code provides that,

> *subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof*, the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case. 11 U.S.C. § 546(c) (emphasis added).

16. Prior to BAPCPA's enactment, section 546(c) did not address the impact of a prior lien holder's rights on the ability of a seller's right to reclaim its goods. *In re Hhgregg, Inc.*, 949 F.3d 1039, 1046 (7th Cir. 2020); *In re Dana Corp.*, 367 B.R. 409, 416 (Bankr. S.D.N.Y. 2007). However, section 546(c), as amended by BAPCPA, makes explicit "that a seller's right to reclaim goods is subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." *Dana Corp.*, 367 B.R. at 416; *Hhgregg, Inc.*, 949 F.3d at 1047; *In re Specialty Shops Holding Corp.*, 2020 WL 4260516, at *3; *In re Advanced Mktg. Servs., Inc.*, 360 B.R. 421, 426 (Bankr. D. Del. 2007).

17. Now, under section 546(c), "if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless." *Dana Corp.*, 367 B.R. at 419; *Hhgregg, Inc.*, 949 F.3d at 1048 (quoting *Dana Corp.*, 367 B.R. at 419); *Circuit City Stores, Inc.*, 441 B.R. at 509 (citing *Dana Corp.*, 367 B.R. at 421); *In re Specialty Retail Shops Holding Corp.*, 606 B.R. at 368 (quoting *Circuit City Stores, Inc.*, 441 B.R. at 509).

18. As of the Petition Date, the Prepetition Agent's claim against the Debtors was in excess of $56,260,439.40, secured by first-priority liens on all of the Debtors' assets. The value

5

of Acro Display's goods does not exceed the amount of debt secured by the Prepetition Agent's prior liens. Therefore, Acro Display's reclamation claim is valueless.

19. In support of its argument that "section 546(c) does not create a special property right for lenders" Acro Display cites to cases decided based on the pre-BAPCPA version of section 546(c). Motion at ¶¶ 28–31. The pre-BAPCPA version of section 546(c) did not contain any reference to a prior lienholder's rights, whereas section 546(c) as amended by BAPCPA explicitly subjects a reclamation claim to a prior lienholder's rights. *Dana Corp.*, 367 B.R. at 416. The cases cited by Acro Display no longer provide a basis for it to recover.

### C. Acro Display's Vague Allegations of Fraud Are Meritless

20. Additionally, Acro Display asserts that its reclamation claim is "superior based on the fraud perpetrated by the Debtors as implicitly recognized by the property rights provided by the States," quoting the first sentence of Section 2-702, Official Comment 2, of the Uniform Commercial Code. Motion at ¶ 34. However, Acro Display's reliance on this portion of the comment for support of its argument is misleading as Acro Display omits the second sentence of the comment, which specifies that, under such circumstances, the claimant's remedy is to demand reclamation within ten days of receipt of the goods, as follows:

> Subsection (2) takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller. *This Article makes discovery of the buyer's insolvency and demand within a ten day period a condition of the right to reclaim goods on this ground. The ten day limitation period operates from the time of receipt of the goods.* U.C.C. § 2-702, Official Comment 2 (amended 1966) (emphasis added).

21. Further, section 2-702(2) of the Uniform Commercial Code specifically states that:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months

6

before delivery the ten day limitation does not apply. *Except as provided in this division the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay*. U.C.C. § 2-702(2) (amended 1966) (emphasis added).

22. Acro Display does not assert that any written representations (or misrepresentations) of solvency were ever made to it by the Debtors at any time, let alone in the three months prior to delivery of the Shelves. Thus, Acro Display "may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or intent to pay" and has no support for an administrative expense claim based on its argument that the goods were acquire by fraud. Further, Acro Display has not plead allegations of actual fraud with the sufficient particularity required. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Thus, there is no substantiation of fraud that would permit allowance under section 546(c) of the Bankruptcy Code an administrative expense claim in favor of Acro Display.

II. **Acro Display Is Not Entitled to an Administrative Expense Claim for the Reclamation Invoices Under Section 503(b)(1) of the Bankruptcy Code Because It Has Not Established a Post-Petition Transaction or Benefit to the Estate.**

23. Acro Display has not established that it is entitled to an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code. Section 503(b)(1)(A) defines administrative expenses as "the actual necessary costs and expenses of preserving the estate." Acro Display bears the burden of demonstrating it is entitled to an administrative expense claim. *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007); *Food Employers Labor Relations Ass'n v. Great Atl. & Pac. Tea Co.*, 620 F. App'x 31, 33 (2d Cir. 2015). Acro Display bears a heavy burden as "[a]n allowance for administrative expense priority should be narrowly construed to include only those creditors that perform services that are actual and necessary to preserve the bankrupt estate or that enable it to maintain its business." *In re CIS Corp.*, 142 B.R. 640, 642 (S.D.N.Y. 1992).

7

24. The Second Circuit uses "a two-part test to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A): first, there must be a post-petition transaction, making it a transaction between the debtor in possession and the creditor; and second, the estate must receive a benefit from the transaction." *In re Grubb & Ellis Co.*, 478 B.R. 622, 624 (Bankr. S.D.N.Y. 2012) (citing *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986)); *See also In re Bethlehem Steel Corp.*, 479 F.3d at 172. Here, neither of these factors have been met.

### A. All Transactions Between Acro Display and the Debtors Occurred Prepetition.

25. To sustain its burden, Acro Display "must show either that the *debtor-in-possession (not the pre-petition entity)* incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the *debtor-in-possession (not the pre-petition entity)*." *In re CIS Corp.*, 142 B.R. at 643 (emphasis added). Acro Display has not shown evidence or even alleged that it provided goods to the Debtors following the Petition Date. The purchase orders and Reclamation Invoices attached to the Motion clearly show that the goods were ordered and delivered prior to the Petition Date.

26. The occurrence of a post-petition transaction is necessary to qualify an expense for an administrative expense claim under section 503(b)(1)(A). *In re Bethlehem Steel Corp.*, 479 F.3d at 172–73 (An expense "can only be an administrative expense if the debtor received the consideration for the obligation after the commencement of bankruptcy proceedings."); *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW), 2019 WL 4555990, at *8 (Bankr. S.D.N.Y. Sept. 19, 2019).

27. In evaluating whether post-petition transactions have occurred, courts in this jurisdiction have held that "a creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the

8

estate. *If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession.*" *In re Westinghouse Elec. Co. LLC*, 2019 WL 4555990, at *8 (quoting *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987)) (emphasis added); *See also In re Grubb & Ellis Co.*, 478 B.R. at 625; *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002).

28. According to the purchase orders attached to the Motion, the Shelves were ordered in January and February of 2020 and, as indicated in the Motion at ¶ 8, were delivered between August 5, 2020 and September 3, 2020, all prior to the Petition Date. As such, Acro Display is not entitled to an administrative expense claim under section 503(b)(1)(A).

29. Further, Acro Display's assertion that "the continued, post-petition use of property gives rise to an administrative expense claim," Motion at ¶ 38, is not applicable here. The post-petition use of property has given rise to administrative expense claims in specific, limited circumstances, none of which are similar to the transactions between Acro Display and the Debtors, and the cases cited by Acro Display to support its contention are easily distinguishable. Unlike *In re John's Meat Emporium, Inc.*, 176 B.R. 700, 701 (Bankr. E.D.N.Y. 1995), "[t]his is not a case in which a debtor leased real property or personal property and continued to use it after a bankruptcy filing." *Westinghouse Elec. Co.* 2019 WL 4555990, at *10. Nor is this a case in which a debtor occupied the administrative expense claimant's property as occurred *In re Kuvykin*, No. 18-10760 (JLG), 2018 WL 4191854 (Bankr. S.D.N.Y. Aug. 31, 2018). Here, the Shelves were sold to the Debtors and installed in the Debtors' stores prior to the Petition Date and remained there during the Debtors' liquidation sales.

30. The Debtors' post-petition use of the Shelves does not constitute a post-petition transaction as required to establish an administrative expense claim under section 503(b)(1)(A).

9

### B.    The Debtors Have Not Derived a Quantifiable Benefit from Their Use of the Shelves.

31.    Courts in this jurisdiction, "permit administrative expense priority to be afforded only where there has been a 'concrete, actual benefit' conferred." *In re REFCO, Inc.*, No. 07 CIV. 4784 (DLC), 2008 WL 140956, at *6 (S.D.N.Y. Jan. 14, 2008).  Accordingly, when a transaction confers a "speculative benefit [that] is not quantifiable," it is not entitled to administrative expense treatment.  *Id.* at *7 (quoting *In re CIS Corp.*, 142 B.R. at 644).

32.    Any benefit provided to the Debtors from their use of the Shelves is not readily quantifiable.  The Shelves display certain shoes, and there is simply no way to quantify any benefit that the Debtors may have received from the shoe displays during the Debtors' liquidation.

33.    Moreover, even if the Debtors have benefited, a "benefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim." *In re Grubb & Ellis Co.*, 478 B.R. at 625 (quoting *In re Enron Corp.*, 279 B.R. at 705); *In re Old Carco LLC,* 424 B.R. 650, 656 (Bankr. S.D.N.Y. 2010), aff'd, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) ("benefit to the debtor-in-possession alone … is not sufficient to warrant entitlement to an administrative claim").

34.    In order to qualify for an administrative claim under § 503(b)(1)(A), the debtor in possession must have also induced the performance.  *In re Old Carco LLC,* 424 B.R. at 656.  As discussed above, the Debtors as debtors in possession did not induce Acro Display's performance; all transactions between the Debtors and Acro Display occurred prepetition.

35.    Accordingly, Acro Display has not demonstrated that it is entitled to an administrative expense claim under section 503(b)(1)(A).

10

**III.     Even if Acro Display Were Entitled to an Administrative Expense Claim for the Reclamation Invoices, It Is Not Entitled to Immediate Payment of Any Such Claim.**

36.     The immediate payment of administrative expense claims prior to the close of a debtor's case is not required.  The determination of "[t]he timing of distributions for administrative expense payments, other than at the close of the case, is within the discretion of the Court." *In re King*, 392 B.R. 62, 67–68 (Bankr. S.D.N.Y. 2008).

37.     In determining whether to order immediate payment of an administrative expense claim, courts consider the "prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (citing *HQ Global Holdings, Inc.*, 282 B.R. at 173); *In re Modern Metal Prod. Co.*, No. BKR 08 B 73908, 2009 WL 1362632, at *2 (Bankr. N.D. Ill. May 13, 2009).

38.     These factors weigh heavily against ordering the immediate payment of any claim to which this Court may determine that Acro Display is entitled.  First, if the Debtors were required to pay Acro Display before liquidating their assets, it would be prejudiced.  In order to conduct their going-out-of-business sales, the Debtors have carefully planned their budget and any immediate payment to Acro Display could cause a breach of the Debtors' agreements with the Prepetition Agent and lenders regarding the Debtors' use of cash collateral.  Second, Acro Display has not provided any evidence demonstrating that waiting to receive payment until consummation of a plan of liquidation in the Debtors' Chapter 11 Cases would result in hardship.  Lastly, paying Acro Display ahead of other administrative expense claimants would undermine the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets," thereby harming other creditors.  *In re King*, 392 B.R. at 67–68 (quoting *In re Chi–Chi's*, Inc., 305 B.R. 396, 401 (Bankr. D. Del. 2004)).  Before making any distributions to other creditors, the Debtors

need to liquidate their assets and repay their Prepetition Lenders. Thus, even if Acro Display were entitled to an administrative expense claim, such claim should not receive immediate payment.

## RESERVATION OF RIGHTS

39. The Motion reserved Acro Display's rights to assert any other claims, including claims under section 503(b)(9) of the Bankruptcy Code. Motion at ¶ 45. Accordingly, the Debtors expressly reserve their rights with respect to any claims that may be asserted by Acro Display in the future.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion and grant other relief.

Dated: November 24, 2020  
      New York, New York

Respectfully submitted,  
/s/ *Lucy F. Kweskin*

Lucy F. Kweskin  
Matthew A. Skrzynski  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, New York 10036  
Telephone: (212) 969-3000  
Facsimile: (212) 969-2900  
Email: lkweskin@proskauer.com  
Email: mskrzynski@proskauer.com

-and-

Jeff J. Marwil (admitted *pro hac vice*)  
Jordan E. Sazant (admitted *pro hac vice*)  
Brooke H. Blackwell (admitted *pro hac vice*)  
**PROSKAUER ROSE LLP**  
70 West Madison, Suite 3800  
Chicago, IL 60602-4342  
Telephone: (312) 962-3550  
Facsimile: (312) 962-3551  
Email: jmarwil@proskauer.com  
Email: jsazant@proskauer.com  
Email: bblackwell@proskauer.com

-and-

Peter J. Young (admitted *pro hac vice*)  
**PROSKAUER ROSE LLP**  
2029 Century Park East, Suite 2400  
Los Angeles, CA 90067  
Telephone: (310) 557-2900  
Facsimile: (310) 577-2193  
Email: pyoung@proskauer.com

*Attorneys for Debtors  
and Debtors in Possession*