**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 20-12097 (SCC) |
| | ) | |
| CORTLANDT LIQUIDATING LCC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

### INTERIM ORDER GRANTING, IN PART, PLAN ADMINISTRATOR'S
### OBJECTION TO PROOF OF CLAIM NUMBER 1066

WHEREAS, on January 27, 2011, Lincoln Triangle Commercial Holding Co. LLC

("Lincoln Triangle"), as landlord, and C21 1972 Broadway LLC ("C21 Broadway"), as tenant,

entered into a lease (as amended, the "Lease") for the premises located at 1972 Broadway, New

York, New York (the "Property").  Pursuant to an accompanying guaranty agreement, Century

21 Department Stores LLC (the "Guarantor") guaranteed the payment, performance, and

observance of all of C21 Broadway's obligations under the Lease as tenant, in lieu of a cash

security deposit.  The Lease is secured by a letter of credit (the "Letter of Credit") in the name of

C21 Broadway; and

WHEREAS, on September 10, 2020 (the "Petition Date"), certain affiliates of C21

Broadway, including the Guarantor (collectively, the "Debtors"), filed voluntary petitions for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  C21

Broadway did not file a voluntary petition for relief under the Bankruptcy Code; it remains a

non-debtor as of the date of this Order; and

WHEREAS, on October 7, 2020, the Debtors filed a *Notice of Rejection of Executory*

*Contracts and Unexpired Leases* [Dkt. No. 110], seeking to reject the Lease and related

documents. On October 13, 2020, Lincoln Triangle objected to the rejection on the grounds that

C21 Broadway, the tenant on the Lease, was a non-debtor and thus lacked the power to reject the

Lease under the Bankruptcy Code. (*See* Dkt. No. 120.) Subsequently, the Debtors filed a *Notice*

*of Corrected Schedule Related to Notice of Rejection of Executory Contracts and Unexpired*

*Leases* [Dkt. No. 174] which removed the Lease from the schedule of leases and executory

contracts to be rejected; and

WHEREAS, on October 9, 2020, before the expiration of the term of the Lease, C21

Broadway vacated the Property and delivered the keys to Lincoln Triangle. No additional rent

was paid under the Lease on account of use and occupancy after such date. Lincoln Triangle

confirmed in writing that it did not accept a termination of the Lease, drew down the full balance

of the Letter of Credit ($7,600,863.69), and held the proceeds of such drawing as cash security

for the Lease. Lincoln Triangle states that, on a monthly basis, it has withdrawn from the cash

security sufficient funds to cover monthly rents under the Lease and other payment obligations as

they have become due; and

WHEREAS, on December 9, 2020, Lincoln Triangle timely filed a proof of claim against

the Guarantor, Century 21 Department Stores LLC ("Claim Number 1066"). Claim number

1066 asserts a total claim of $44,378,698.04 on account of estimated damages resulting from the

breach of the Lease by C21 Broadway consisting of: (a) amounts for future rents as provided in

the Lease; (b) amounts for future real estate taxes, operating expense escalations, and utilities

and repairs, each estimated using historical numbers with projected annual increases; and (c)

actual amounts for cleanup costs, mechanic's liens, and window repairs, with future amounts

discounted at the rate of 6% per annum to the Petition Date and further reduced by the amounts

paid and to be paid on account of the cash proceeds of the drawdown of the Letter of Credit

(Lincoln Triangle Response (as defined below) ¶ 5).  As of November 29, 2021, Lincoln

Triangle acknowledged that "[a]t this point in time, no credit has been applied to the claimed

amount, as no new tenants with newly executed leases have yet been secured" (*Id.*); and

WHEREAS, on November 5, 2021, after confirmation of the *Debtors' First Amended

Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), Alan D.

Halperin, the Plan Administrator of the Debtors (the "Plan Administrator"), filed the *Objection

to Proof of Claim No. 1066 Filed by Lincoln Triangle Commercial Holding Co. LLC* [Dkt. No.

1083] (the "Objection"); and

WHEREAS, on November 30, 2021, Lincoln Triangle filed the *Response of Lincoln

Triangle Commercial Holding Co. LLC to Objection by Plan Administrator to Proof of Claim No

1066* [Dkt No. 1100] (the "Lincoln Triangle Response"), and, on December 15, 2021, without

leave of Court, filed the *Supplemental Response of Lincoln Triangle Commercial Holding Co.

LLC to Objection by Plan Administrator to Proof of Claim No 1066* [Dkt No. 1113] (the

"Supplemental Response"); and

WHEREAS, on January 5, 2022, the Plan Administrator filed a reply to the Lincoln

Triangle Response and the Supplemental Response [Dkt. No. 1122] (the "PA Reply"), together

with the *Declaration of Norman R. Veit Jr.* (the "Veit Decl."); and

WHEREAS, by the Objection, the Plan Administrator argues that Claim Number 1066

should be limited as follows: (i) in accordance with section 502(b)(6) of the Bankruptcy Code,

termination damages must be calculated based on the rent reserved by the Lease, without

acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the

remaining term of the Lease; (ii) the "time approach" should be used to calculate termination

damages under section 502(b)(6); (iii) Claim Number 1066's lease termination damages must

only include those items that may be properly classified as "rent reserved" under section 502(b)(6); (iv) the projected future "rent reserved " used to calculate Claim Number 1066 must reflect reasonable assumptions calculated consistent with historical data; and (v) the Letter of Credit held as security for the Property must be applied to reduce the capped lease termination damages (Objection ¶ 3).  By the Objection, the Plan Administrator specifically requests that the Court grant interim relief in the form of an order holding that Claim Number 1066 is subject to the damages cap imposed by section 502(b)(6) of the Bankruptcy Code; and

WHEREAS, the Plan Administrator submits that a claim against a debtor-guarantor under a guaranteed lease is subject to the damages cap imposed by section 502(b)(6) and must be limited as such.  Notwithstanding the statute's failure to explicitly reference damages resulting from a guaranty of a lease, a majority of courts that have considered the issue have held that section 502(b)(6) applies to cap the claims of a lessor against a debtor-guarantor under a lease (Objection ¶¶ 21-22); and

WHEREAS, the Plan Administrator argues that, here, the Lease terminated both as a matter of fact and as a matter of law, but, even assuming the Court is unable to conclude on the facts before it that the Lease terminated pursuant to New York law (which, the Plan Administrator concedes may require discovery and fact-finding), the Court can nonetheless conclude that the Lease terminated for purposes of section 502(b)(6) (PA Reply ¶ 9 (citing *In re Flanigan*, 374 B.R. 568, 576 (Bankr. W.D. Pa. 2007))); and

WHEREAS, by the Objection, the Plan Administrator expressly argues that because Lincoln Triangle's claims for store cleanup costs, mechanics' liens, window repairs, and "other repairs" in the amount of $50,000 per year (collectively, the "Additional Damages") arose from the termination of the Lease, they are subject to the test set forth by the Ninth Circuit Bankruptcy

Appellate Panel in *In re McSheridan* for an expense to constitute "rent reserved" under section

502(b)(6)(A) of the Bankruptcy Code.  Specifically, the Plan Administrator asserts that the

Additional Damages cannot be allowed as "rent reserved" under section 502(b)(6)(A) because

the Additional Damages are not defined as "rent" under the Lease, nor are they fixed, regular, or

periodic, as required in order to qualify as "rent reserved" under section 502(b)(6) (*see* Objection

¶¶ 37-38 (citing *Kusbe v. McSheridan (In re McSheridan)*, 184 B.R. 91, 99 (B.A.P. 9th Cir.

1995) (stating that, after determining that a damage amount arises from the termination of a

lease, a court may consider such expense "rent reserved" pursuant to section 502(b)(6) if: (i) the

charge is (a) designated as "rent" or "additional rent" in the lease, or (b) provided as the

tenant/lessee's obligation in the lease; (ii) the charge relates to the value of the property or the

lease thereon; and (iii) the charge is properly classifiable as rent because it is a fixed, regular or

periodic charge))).  Moreover, the Plan Administrator submits that, despite Lincoln Triangle's

assertion that most of the Additional Damages are "actual," such damages are unsubstantiated by

any evidence.  Finally, the Plan Administrator observes that the "other repairs" portion of the

Additional Damages appears to be asserted not on account of any actual damages incurred but

instead based upon purely speculative anticipatory damages that are not defined obligations of

C21 Broadway under the Lease (Objection ¶ 39); and

WHEREAS, with respect to the Letter of Credit, the balance of which was drawn down

by Lincoln Triangle after October 9, 2020, the Plan Administrator submits that, assuming the

Court determines that section 502(b)(6) applies to cap Claim Number 1066, the claim must be

further reduced by the application of the Letter of Credit proceeds once the claim has been

capped.  According to the Plan Administrator, when a letter of credit operates as a security

deposit, as here, any drawdown on the letter of credit by the landlord after the termination of the

lease must be deducted from the landlord's claim after such claim has been capped pursuant to section 502(b)(6) (Objection ¶¶ 45-46 (citations omitted)); and

WHEREAS, Lincoln Triangle asserts that, because section 502(b)(6) of the Bankruptcy Code only applies to claims resulting from the *termination* of a lease of real property, and the Lease was neither rejected by a debtor nor terminated (i) by Lincoln Triangle (who was the only party that had the power to terminate the Lease) or (ii) by operation of New York state law because Lincoln Triangle never accepted a surrender of the Property, the statutory damages cap under section 502(b)(6) is inapplicable here; and

WHEREAS, Lincoln Triangle further asserts that the Letter of Credit, having been posted by a non-debtor tenant, C21 Broadway, as security for the Lease, is nothing more than third party security to which the Debtors have no possible claim or interest (Lincoln Triangle Response ¶ 8). As such, Lincoln Triangle maintains that the proceeds of the Letter of Credit can be applied to reduce Claim Number 1066 *prior to* any capped amount of such claim pursuant to section 502(b)(6) being determined; and

WHEREAS, with respect to the Letter of Credit, the Plan Administrator argues that courts have held that any drawdown on a letter of credit by a landlord must be deducted from the landlord's claim after it is capped pursuant to section 502(b)(6) (PA Reply ¶ 12 n.6) (citations omitted)).  Moreover, the Plan Administrator submits that, while the Letter of Credit is in the name of non-debtor C21 Broadway, the Guarantor, who is one of the Debtors, was in fact the obligor on the Letter of Credit (PA Reply ¶ 11 (citing Veit Decl. ¶ 2)).  According to the Plan Administrator, after the Petition Date, the Letter of Credit was called in full, and the Debtors' outstanding obligations to the issuer, JPMorgan Chase Bank, N.A., were satisfied in full from estate assets on the effective date of the Plan (*Id.*); and

WHEREAS, the Court has considered the standard under section 502(b)(6) of the

Bankruptcy Code, which provides that a claim of a lessor for damages for the termination of a

lease of real property are capped at:

A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15
percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
       (i) the date of the filing of the petition; and
       (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased
       property; plus
(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates; and

WHEREAS, courts have held that section 502(b)(6) applies to limit claims of a lessor for

damages for the termination of a lease whether the debtor is the lessee itself or is a guarantor of

the lease. *See In re Ancona*, 2016 WL 828099, at *5 (Bankr. S.D.N.Y. 2016) (collecting cases);

*In re Episode USA, Inc.*, 202 B.R. 691,695 (Bankr. S.D.N.Y. 1996) ("[t]he thrust of the §

502(b)(6) cap is not directed toward any particular debtor entity; rather, it acts to limit the

amount of damages the lessor may be allowed from the bankruptcy estates") (internal quotations

omitted)); *In re Flanigan*, 374 B.R. at 575-76 (concluding that section 502(b)(6) applies not only

to limit landlord claims against tenants in bankruptcy, but also in instances where guarantors of

such leases seek bankruptcy protection); and

WHEREAS, the Court has further considered the standard for termination of a lease by

operation of New York state law, which standard requires both the landlord and the tenant to

take unambiguous actions indicating that each party views the lease as terminated before a court

will find an effective termination of the lease. *See Brock Enters. v. Dunham's Bay Boat Co.*, 292

A.D.2d 681, 682 (3d Dept. 2002) (citations omitted) ("A surrender by operation of law occurs

when the parties to a lease both do some act so inconsistent with the landlord-tenant relationship

that it indicates their intent to deem the lease terminated"); and

WHEREAS, bankruptcy courts have held that (i) "termination" under section 502(b)(6) of the Bankruptcy Code "has a slightly broader meaning than the same term of art used under state landlord-tenant law" and (ii) termination under section 502(b)(6) may in fact include circumstances where a lease is "functionally dead," such as circumstances where there is an uncured breach of a lease coupled with an intentional abandonment of the premises to the landlord, similar to rejection. *See In re Flanigan*, 374 B.R. at 576-78; *In re Intern. BioChemical Industries, Inc.*, 521 B.R. 395, 402-3 (Bankr. N.D. Ga. 2014); and

WHEREAS, having reviewed and considered applicable law and the parties' arguments with respect to Claim Number 1066, the Court finds that (i) section 502(b)(6) applies to limit claims of a lessor for damages where the debtor is a guarantor under the lease and is not the lessee; (ii) it would be antithetical to the purpose of section 502(b)(6) to permit a landlord claimant to avoid the section 502(b)(6) damages cap by simply declining to (a) terminate the lease at issue or (b) accept the lessee's surrender of the premises after the lessee has intentionally abandoned the premises (such that, based on the parties' actions, the lease would be deemed terminated under state law);[1] (iii) here, the Lease was "functionally dead" upon the October 9, 2020 intentional vacatur of the Property and the turnover of the keys to Lincoln Triangle, notwithstanding Lincoln Triangle's refusal to terminate the Lease or to accept a surrender of the Property; (iv) the Court need not reach the question of whether the Lease was terminated pursuant to New York law in order to conclude that, once the Lease was "functionally dead," it

---

[1]    *See, e.g., In re Flanigan*, 374 B.R. at 577 (noting that "[i]f 'termination' for purposes of § 502(b)(6) of the Bankruptcy Code equated to state law termination of the lease only, landlords could always avoid the damages cap in § 502(b)(6) by simply not 'terminating' the lease . . . and instead cause accelerated rent claims to swallow the assets available for distribution to creditors in any given bankruptcy. Congress surely did not intend the statute to work this way.").

can be considered "terminated" for purposes of section 502(b)(6); and (v) accordingly, section 502(b)(6) applies to Claim Number 1066; and

WHEREAS, the Court has determined that it will not reach at this time the issues of (i) calculation of damages of Claim Number 1066 pursuant to section 502(b)(6) or (ii) whether the Additional Damages asserted by Claim Number 1066 qualify as "rent reserved" pursuant to section 502(b)(6); and

WHEREAS, with respect to the Letter of Credit, uncontroverted evidence has been submitted by the Plan Administrator that the Guarantor, one of the Debtors, was the obligor on the Letter of Credit and that it was in fact satisfied with estate assets pursuant to the Plan.  After considering applicable law, including the decision by the United States Court of Appeals for the Second Circuit in *Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 921 (2d Cir. 1944), establishing the pre-Code practice of deducting security deposits from a landlord's allowable claim rather than from total damages, the Court concludes that the proceeds of such letter of credit should be deducted from Claim Number 1066 to reduce such claim after the section 502(b)(6) calculation is complete, whether or not the Letter of Credit in fact satisfied with estate assets or not.  *See Solow v. PPI Enterprises (U.S.), Inc. et al. (In re PPI Enterprises (U.S.), Inc.)*, 324 F.3d 197, 208-10 (3d Cir. 2003) (affirming bankruptcy court's ruling (i) finding that a landlord's claim, after being capped pursuant to section 502(b)(6), should be reduced by the amount the landlord drew from a letter of credit because the parties intended the letter of credit to operate as a security deposit and (ii) declining to limit such holding to circumstances in which the letter of credit was given directly to the landlord by the debtor, as opposed to by a third party, and electing to treat a letter of credit from a third party as a payment from the debtor to the landlord in order to reduce the debtor's 502(b)(6) burden); *see also In re AB Liquidating Corp.*, 416 F.3d

961, 965 (9th Cir. 2005) (affirming lower court's application of letter of credit proceeds to landlord's allowable claim under section 502(b)(6) rather than to its gross damages and noting Congress's explicit endorsement of the Second Circuit's holding in *Oldden* in the legislative history of section 502(b)(6)); *In re Mayan Networks Corp.*, 306 B.R. 295, 299 (B.A.P. 9th Cir. 2004) (stating that "[t]he fact that letters of credit themselves are not property of the estate is a red herring. There is nothing in the statute or in case law that suggests that the limitation in § 502(b)(6) applies only to amounts that are paid directly from property of the estate. Rather, the appropriate analysis looks to the impact that the draw upon the letter of credit has on property of the estate"). Here, the Guarantor, a Debtor, was the obligor on the Letter of Credit, and it also provided a guaranty to Lincoln Triangle in lieu of a cash security deposit. The drawdown of the Letter of Credit by Lincoln Triangle impacts the Debtors' estates by providing Lincoln Triangle with a windfall at the expense of the Debtors' other unsecured creditors. The Court thus concludes that the proceeds of the Letter of Credit should be applied to reduce Lincoln Triangle's net claim after application of section 502(b)(6) to cap the damages asserted by Claim Number 1066.

NOW, THEREFORE, it is hereby

ORDERED, that the Objection is granted in part as set forth herein; and it further

ORDERED, that Claim Number 1066 shall be limited by the damages cap set forth in section 502(b)(6), after which the proceeds of the Letter of Credit shall be applied to reduce the allowed claim; and it is further

ORDERED, that Lincoln Triangle and the Plan Administrator shall promptly meet and confer regarding the appropriate calculation of the capped claim, including all amounts to be included in such calculation, and the parties shall report to the Court on the status of such

10

discussions at a telephonic conference to be held by the Court on June 13, 2022 at 10:00 a.m.

(the "Status Conference").  The Status Conference shall be held telephonically via

CourtSolutions LLC and parties may register to listen or to participate at www.court-

solutions.com; and it is further

       ORDERED, that, prior to the Status Conference, the Plan Administrator shall reserve an

amount on account of Claim Number 1066 that is consistent with the maximum allowable

amount for such claim pursuant to section 502(b)(6) of the Bankruptcy Code.


Dated; May 20, 2022
New York, New York                 /S/ Shelley C. Chapman
                              HON. SHELLEY C. CHAPMAN
                              UNITED STATES BANKRUPTCY JUDGE